(No. 26351.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MARGARET BROWN, Plaintiff in Error.

*Opinion filed January 20, 1942—Rehearing denied March 11, 1942.*

SHAW, J., dissenting.

ODE L. RANKIN, and C. A. CAPLOW, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and THOMAS J. COURTNEY, State's Attorney, (EDWARD E. WILSON, JOHN T. GALLAGHER, and MELVIN S. REMBE, of counsel,) for the People.

Mr. JUSTICE FARTHING delivered the opinion of the court:

Margaret Brown was convicted by a jury in the criminal court of Cook county of the larceny of property of the value of $23.75. Her husband, Samuel Brown, was indicted with her but was granted a severance. As grounds for reversal, she urges the *corpus delicti* was not proved, a stock-book record was erroneously admitted in evidence, and that prejudicial statements made on the trial deprived her of a fair trial.

It was charged by the People that defendant stole a lady's coat from the Waukegan Dry Goods, Inc., at its place of business in Waukegan, in Lake county, and transported it to Chicago, in Cook county. Under such a state of facts, venue was properly laid in Cook county. (Ill. Rev. Stat. 1941, chap. 38, par. 707.) The People introduced the testimony of three police officers of the city of Chicago, who related an oral confession claimed to have been made to them by Margaret Brown. According to this testimony, about 3 :00 o'clock in the morning of July 29, 1940, she came to the Summerdale police station, in Chicago, and said she wanted to speak to the lientenant. Sergeant James Hackett, who was acting lieutenant, asked her what she wanted. She stated that she was a thief, had never done anything but steal for a living for ten or fifteen years, and that she wanted herself and her husband to be arrested. When asked to be more specific, she told that she had stolen a coat from the Waukegan Dry Goods Store in Waukegan while her husband drove the car around a block, and explained how she had concealed it in a bag

covered by the "slacks" she wore. She was also wearing a heavy coat. They then returned to their apartment in Chicago and "Sammy" that night telephoned a girl by the name of Peggy Blair, who lived at 5050 Sheridan Road in Chicago, and that she came to the apartment and bought the coat for $30. The reason defendant gave for wanting her husband arrested was that he had been paying attention to his first wife. The officers sent a squad car to get Peggy Blair and the coat. They found her at 5050 Sheridan Road and she had the coat. She admitted having bought it from Brown under the circumstances related by defendant, his wife. She stated defendant had said nothing to her while she was buying the coat. Peggy Blair's testimony corroborated the defendant's alleged statements about the sale of the coat. She also said two or three other men were in the apartment on the bed.

Later in the morning, according to the officers, they asked Margaret Brown if she would take them to Waukegan to the place from which she had stolen the coat, and she assented. They gave her some breakfast and about 9:00 or 9:30 o'clock drove to Waukegan. She pointed to the Waukegan Dry Goods Store and said "That is the store there." She further stated that she had taken the coat from the second floor. They parked the car and sergeant Hackett took the coat into the store. Officers Madera and Ruge remained with defendant. Hackett returned in a few minutes with Walter Mack, general manager of the store, Harry Teagarden, another manager, and Margaret Sayles, an employee. They did not recognize defendant, but asked her how she had concealed the coat so as to be able to leave the store with it without being caught. She said that she should not divulge trade secrets. They asked her when she had stolen the coat, and she replied "A week ago Friday." The officers then took defendant back to Chicago and put her in jail. The next day Hackett asked her if she would sign a statement, but she refused and said

"I have told enough, you have got enough to send Sammy and me both away now."

Margaret Brown testified at the trial and claimed that she was intoxicated at the time she went to the police station and made the oral confession, and that the officers kept giving her whiskey to drink until they arrived at Waukegan. The officers testified there was an odor of liquor on her breath, but stated definitely that she was not intoxicated. They denied giving her anything to drink except one beer on the way back from Waukegan. She claimed to have been drunk for two or three days before going to the police station, that what she told was untrue, and that she told such a story only because she had had trouble with her husband and was angry at him. Defendant's husband testified that, among other things he did, he was in the fur business; that he had bought this coat from two other men for $30 and sold it to Peggy Blair for the same price because he knew she wanted such a coat. These two men were not produced at the trial, although he testified he had known one of them for sixteen years.

Margaret Sayles testified for the People and stated her position was the head of the stock of the fur and coat department of the Waukegan Dry Goods Store. She positively identified the coat claimed to have been stolen by defendant, People's exhibit No. 1, as one that had been in the stock of the Waukegan Dry Goods, Inc., store, and that they at one time had six of them in stock. She testified the figures "923" on a tape attached to the lining of the coat had been written by her, and that this number was used by the store to indicate that it had been made by a certain manufacturer, and that when a garment was sold the tape bearing this number would be removed by the person making the sale. As above stated, the tape on the lining of the coat claimed to have been stolen by defendant had not been removed and it bore the number "923." Mrs.

Sayles was then handed People's exhibit No. 3 for identification, which was a page from the store's stock-report book. She stated that book was in her care, custody and control; that she did not keep it herself but it was under her control, and that she saw it sometimes once a week, sometimes two or three times a week. She testified the book was used to keep track of the coats that are received in stock, and that as they are sold they are marked out in the book. According to this exhibit, six coats had been received, four of them had been sold and one returned to the manufacturer. The coats were designated in this book merely as "923." The following was also on this page written in pencil "One stolen." She testified this was written by one of the girls who took care of the detailed work. She was cross-examined by defendant's counsel, and at the close of the redirect examination this page of the record was offered in evidence. The court inquired of defendant's counsel whether he objected to it and he replied in the negative, and it was received in evidence. The assistant State's attorney then announced that the People rested its case. Defendant's attorney moved to instruct the jury to find the defendant not guilty on the ground the People had failed to establish the *corpus delicti,* and this motion was denied. Margaret Brown's attorney then further cross-examined Mrs. Sayles, and it developed that she was unable to tell who had made some of the entries in People's exhibit No. 3, and that she herself had written "One stolen" after the police had been to the store July 29, 1940, with defendant. At the close of this further cross-examination defendant's attorney stated "I am renewing the motion, if the court please, to the admission of this exhibit" for the reason it appeared from the cross-examination she was not familiar with the handwriting of some of the notations, could not identify any handwriting except her own, and her notation was based upon hearsay. The court stated he had made no objection to it originally,

therefore he could not renew it. The attorney then stated "I will object to it now." This objection was overruled.

The contention that the *corpus delicti* was not established beyond a reasonable doubt, though it is not expressly so stated, proceeds on the theory that it must be established independently without considering confessions or admissions of the accused. The true rule is that although a mere naked uncorroborated confession is insufficient to convict, the *corpus delicti* is not required to be proved beyond a reasonable doubt by evidence *aliunde* the confession or admissions of the accused. It is not essential that the *corpus delicti* shall be established by evidence other than that which tends to connect the accused with the crime. The same evidence may be used to prove both the existence of the crime and the guilt of the defendant. The test is whether the whole evidence proves the fact a crime was committed and that the accused committed it. (*People* v. *Henderson,* 378 Ill. 436; *People* v. *Nachowicz,* 340 id. 480; *People* v. *Hauck,* 362 id. 266.) Here the confession of defendant was amply corroborated by other circumstances in evidence. In her confession she stated she and her husband sold the coat for $30 to Peggy Blair, who lived at 5050 Sheridan Road. On inquiry, it was found this account of the sale, including the name and address of the buyer and the amount for which it was sold, was correct. Defendant told the officers she had stolen it from the Waukegan Dry Goods Store in Waukegan, and later when they drove to Waukegan she directed them to that store. This coat was identified by Mrs. Sayles as one that the store had had in stock, and indicative of the fact it was stolen was the tape with the number "923" which it was the custom of the employees to remove in case of a sale. These facts and circumstances, together with the oral confession, established the *corpus delicti* beyond any reasonable doubt.

It is next claimed the objection to the stock-book record should have been sustained because it was not properly

proved and was hearsay. It is difficult to see that defendant was greatly injured by the introduction of this exhibit. According to it there was still one coat of this kind in stock, except for the notation "one stolen" which was admittedly written after the police had been to the store. The People did not attempt to connect this up by showing that actually there was not one coat in stock. The error in admitting this exhibit is not sufficient to warrant reversal of the judgment.

Defendant complains that prejudicial statements were made on the trial which prevented her from having a fair trial. Sergeant Hackett, in relating the confession made by defendant, stated she said she had been in jail in Iowa, Atlantic City, Columbus, and Milwaukee. An objection to this was sustained, that part of the statement ordered stricken, and the court told the witness to confine himself to this particular charge, in narrating the conversation. The other statement claimed to be prejudicial was that, in answer to a question as to whether on the way back from Waukegan defendant pointed out any other store, sergeant Hackett said she pointed out one in Lake Forest. The court sustained an objection to this line of questioning. Defendant also claims Hackett made gestures in relating the confession of defendant which were prejudicial. However, the court stated for the record he observed no unusual gestures. The harmful effect of these statements was removed by the court in so far as it was possible to do so, and, in view of the clear proof of guilt shown here, they are insufficient to warrant a reversal.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE SHAW, dissenting.