(No. 32768.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WOODROW FRANKLIN, Plaintiff in Error.

*Opinion filed September 24, 1953.*

E. HAROLD WINELAND, of Flora, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and H. CARROLL BAYLER, State's Attorney, of Louisville, (FRED G. LEACH, and HARRY L. PATE, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

Woodrow Franklin, to whom we shall refer as defendant, was indicted and convicted in the circuit court of Clay County for the larceny of three notes having a total value of $2500. He was sentenced to the penitentiary for a term of two to five years and prosecutes this writ of error to review the record of his conviction.

The indictment against defendant was returned on September 8, 1952. He was arraigned on September 15, 1952,

at which time he appeared with an attorney of his own choice, entered a plea of not guilty and demanded a jury trial. The court set the cause for hearing on October 27, 1952. When that day arrived the case was not reached but it was called for hearing the following morning at 11 :00 A.M., at which time the court was first confronted with a motion which was then filed by defendant's counsel for leave to withdraw. No grounds for withdrawal were stated. The court questioned defendant relative to the motion and was informed that he had contacted an attorney in another city by telephone, but the latter had stated that he could not be present in court on that day. Under the circumstances, the court denied the motion and the trial proceeded without objection or further motion by anyone.

The first contention made by defendant is that the court erred in denying him his right to substitute counsel. The contention made ignores the fact that the record is barren of any showing that defendant sought or was ever denied his right to substitute counsel. Insofar as the attorney's motion is concerned, it has been the rule in this jurisdiction that an attorney may not, in the absence of his client's consent, withdraw from a case without justifiable cause, and then only after proper notice to his client and leave of court, where his name has been entered as attorney of record. (*Jacobson* v. *Ashkinaze*, 337 Ill. 141; *Hollan* v. *Kepner*, 297 Ill. 332.) The record here shows no cause upon which we might base a finding that the court abused its discretion in denying the motion. Even if defendant's acquiescence in his counsel's motion can be termed an effort on defendant's part to effect a substitution of counsel, and we think it is not, we cannot say that the court erred in ruling as it did. The right of a client to discharge his attorney at any time, or to substitute attorneys at any stage of a proceeding either with, or without cause, is well established. (See: 7 C.J.S., Attorney & Client, sec. 119.) It is not, however, a right so absolute that its exercise may not be denied where

it will unduly prejudice the other party or interfere with the administration of justice. To hold otherwise would enable a defendant in a criminal proceeding such as this, to delay his trial until he had exhausted his capabilities of hiring different counsel and to thus harrass and delay the effective prosecution of crime.

When questions of this nature arise in the conduct of a trial, we have held that the manner in which the trial shall proceed is largely within the discretion of the *nisi prius* court and this court will not interfere unless it appears from the record that the party complaining was prejudiced. (*Vincendeau* v. *People,* 219 Ill. 474.) Defendant argues that he was prejudiced in that he was forced to trial with counsel in whom he had no confidence and with whom he had had a disagreement over the conduct of the trial. Insofar as the record is concerned, these are entirely self-serving statements made for the first time in this court. While it does appear that defendant contacted another attorney by telephone, he made no further effort at substitution; he acquiesced in the court's ruling on his counsel's motion and accepted the latter's services without objection. Such a passive attitude can be said to have been a waiver of any objection to his counsel. (Cf. *People* v. *Ephraim,* 411 Ill. 118.) In addition, our examination of the record indicates that the counsel conducted a full and complete defense in a manner which demonstrated his familiarity with criminal matters. We therefore find no prejudice to defendant in that sense. Considering these matters in the light of the facts which show that defendant employed his counsel some six weeks before his cause was set for hearing, that no effort was made to substitute or withdraw until the jury panel had been assembled and the cause called for hearing, and that no grounds or justification were offered for the withdrawal, we must conclude that the court did not, in this instance, abuse its discretion in denying the counsel's motion and continuing with the trial.

The next errors assigned by defendant relate to the sufficiency of certain elements of proof and require some discussion of the facts. It is undisputed that Belle Tolliver loaned the sum of $2500 to members of defendant's family and received from them two notes for $1200 and one for $100. The first of the larger notes was dated April 11, 1950, and was signed by defendant and his parents; the second was dated February 1, 1951, and was signed by defendant, his mother and wife. The $100 note was signed only by defendant's mother and was dated June 2, 1951. All of the notes recited that they were payable to the order of Belle Tolliver and payable at Sailor Springs, Illinois, to W. O. Bunn, a merchant who handled business matters for Belle Tolliver and who was given possession of the notes.

Bunn testified that defendant came to his store on August 18, 1952, asked to see the notes and was permitted to do so. When defendant completed his examination he left the store but returned in a few minutes with his mother who also wished to see the notes. After she had looked at them, Bunn returned them to an envelope and placed it behind a scales on a counter of his store. The mother then stated that she wished to buy a can of paint and went with Bunn to a back room to procure it, leaving defendant alone in the front part of the store. After the Franklins left, Bunn looked for the notes and when he found the envelope and notes missing, immediately swore out a warrant for defendant's arrest. A deputy sheriff named Long served the warrant the same day and, after questioning, defendant admitted taking the notes and stated that he had burned them.

Defendant was then taken to the office of the State's Attorney where, after admonition, he made a written, signed statement to the effect that he had stolen two notes of $1200 each and one of $100 from W. O. Bunn at the latter's store in Sailor Springs, Illinois; that the notes

were all payable to the order of Belle Tolliver and signed by defendant, his mother and wife, with the exception of the $100 note which was signed by his mother alone; and that he had burned the notes after taking them. Following this, defendant was taken to the Bunn store, where he again admitted that he had taken the notes, and then to the place where he had burned the notes at which place the deputy sheriff found ashes of burned paper. At the trial, defendant testified that Bunn had given him the notes on August 18, 1952, telling him to look them over but saying nothing as to when they were to be returned. In rebuttal, Bunn denied that defendant had come into possession of the notes in such a manner.

In attacking the proof, defendant contends that there was a complete failure to establish the *corpus delicti,* unless it was proved by defendant's confession, and proceeds on the theory that the *corpus delicti* must be established beyond a reasonable doubt, independent of any confessions or admissions of an accused. A complete and controlling answer to the contention is found in *People* v. *Brown,* 379 Ill. 262, where this court stated: "The true rule is that although a mere naked uncorroborated confession is insufficient to convict, the *corpus delicti* is not required to be proved beyond a reasonable doubt by evidence *aliunde* the confession or admissions of the accused. It is not essential that the *corpus delicti* shall be established by evidence other than that which tends to connect the accused with the crime. The same evidence may be used to prove both the existence of the crime and the guilt of the defendant. The test is whether the whole evidence proves the fact a crime was committed and that the accused committed it." In the present case the confession of defendant was amply corroborated by numerous other circumstances in evidence. The record shows that defendant was on the scene when the notes disappeared; that he knew of their whereabouts and that he had an opportunity to take them by stealth.

He says that the notes were given to him but such testimony loses its force when it is considered that Bunn made an immediate report to the sheriff and caused defendant's arrest within a few hours after the notes disappeared. These facts and circumstances, together with defendant's oral admissions and written confession, established the *corpus delicti* beyond any reasonable doubt.

It is next urged that the prosecution failed to prove beyond a reasonable doubt that the property stolen was the property alleged as stolen in the indictment. The contention as made is based upon Belle Tolliver's failure to testify as to dates in the notes, together with her apparent lack of knowledge that one of the notes was a renewal note, and upon some confusion exhibited by Bunn when he was explaining that the renewal note had been one of those stolen. Belle Tolliver's sketchy knowledge of the details of the notes is not surprising in view of the fact that she entrusted her business affairs to another. However, we find no merit in this contention. Aside from the isolated instances complained of, a complete examination of Bunn's testimony discloses that he fully and accurately described the notes stolen, in a manner which established beyond a reasonable doubt their identity as the notes referred to in the indictment.

Further attacking the proof, defendant complains that the proof of value of the notes was deficient in that there was no attempt to prove their market value, which is the true test of value to be applied in larceny cases. Two witnesses for the People testified that the value of the notes was $2500, and defendant contends this may or may not have been their market value. We stated in the early case of *Little* v. *People*, 157 Ill. 153, that testimony to the value of stolen property, given in answer to the question, "How much is it worth?" was sufficient to warrant a finding by the jury of such value and, there being no other evidence on the question, such value must be taken as that required by law. In the absence of any evidence to the contrary, it

must be concluded that proper proof of value was made in this case.

The next error which defendant advances as grounds for reversal is that the State's Attorney was guilty of prejudicial conduct in the eyes of the jury when he characterized part of defendant's testimony on cross-examination as a lie. The record shows that defendant's counsel objected to the remark and was sustained by the court. Unless it is apparent that a defendant is injured by improper remarks, a judgment of conviction will not be reversed on that ground alone. (*People* v. *Jenko,* 410 Ill. 478.) While the prosecutor's comment on defendant's truthfulness was improper in the present case, it does not appear that the evidence was so close or of such a circumstantial nature that the error was such as to require a reversal of the judgment.

Defendant also urges for the first time in this court that the indictment against him is void for repugnancy in that it contains contradictory allegations as to whom the notes were payable. While we think the plain meaning of the words "payable to the order of Belle Tolliver * * * payable at Sailor Springs, Illinois, to W. O. Bunn" do not render them adverse and conflicting, it is sufficient to point out that the attack on the indictment comes too late. No advantage can be taken for repugnancy in the allegations of an indictment except by motion to quash, as the charge of repugnancy merely goes to the form of the indictment. *People* v. *Miller,* 278 Ill. 490.

The record discloses that defendant had a fair and impartial trial in which he was ably represented by counsel. Finding no merit in the numerous contentions of error assigned here, it is our opinion that the judgment of the circuit court of Clay County was correct, and it is therefore affirmed.

*Judgment affirmed.*