THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MARVIN TOOLATE, Defendant-Appellant.

Fourth District    No. 13489

Opinion filed December 30, 1976.

Richard J. Wilson and John L. Swartz, both of State Appellate Defender's Office, of Springfield, for appellant.

Robert J. Bier, State's Attorney, of Quincy (G. Michael Prall and Jeffrey B. Levens, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

In a bench trial in Adams County on May 23, 1975, defendant Marvin Toolate was convicted of attempted burglary in violation of section 8—4(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 8—4(a)). He was sentenced to 3 to 9 years imprisonment. The defendant appeals, arguing that he was not proven guilty beyond a reasonable doubt. On the basis of the facts and reasoning which follows, we reverse.

In Quincy, on December 19, 1974, at 2:20 a.m., Police Chief Wilfred Baker was driving west on Oak Street, approaching the intersection of 12th Street. He observed a man walking north on the sidewalk along the west side of 12th Street, approximately 20 feet north of the Maid Rite Sandwich Shop. The man did not quicken his pace as the patrol car passed. Chief Baker turned left and drove south on 12th Street, passing within 20 feet of the man, observing he was approximately 5′9″ tall with

dark, shoulder-length hair, wearing a full-length black coat. Chief Baker then drove into the parking lot north of and adjacent to Maid Rite and noticed fresh cuts at the lock of the front door with fresh wood fibers lying on the ground. He promptly notified the police station, believing an attempted burglary had occurred.

Chief Baker drove out of the lot, turning left on 12th Street, heading toward the intersection from which he had just come. He made a U-turn and parked south of the intersection, facing south on 12th Street. Leaving his car, Baker followed the fresh footprints west on Oak Street, certain they had been left by the man whom he had just seen walking north on 12th Street, who had disappeared at the corner. The fresh footprints led to a 1963 Ford parked facing west on Oak Street, 100 feet west of 12th Street. Fresh tire tracks revealed the Ford had parked there within the last half hour. Another police car arrived, and as the driver, Officer Cox, waited, Officer Parrish approached the Ford, opened the door and found defendant sprawled across the front seat, below window level. He ordered defendant from the vehicle. At this time, Parrish observed the full-length black coat lying in the back seat. Fresh snow lay on the floor of the car.

Backtracking the fresh footprints from the old Ford, Chief Baker rounded the corner onto 12th Street, heading south. He discovered a screwdriver lying in the snow along Oak Street, within a few feet of where the footprints leading to defendant's Ford had turned to cross Oak Street. Chief Baker continued following the tracks down 12th Street to Maid Rite, where he found the same fresh footprints along the west and north sides of the building. He also followed the prints to the east side, which prints ended abruptly where the snow had been cleared. Officer Baker was uncertain whether the snow had been cleared away with a broom or had just melted there. He discovered a crowbar lying in the parking lot, 6 feet north of the building, 15 feet west of 12th Street. These items bore smudges but no fingerprints; a pair of gloves was found in the back seat of defendant's car as well as the coat.

Mr. Eugene Geise, the owner of the Maid Rite Sandwich Shop testified that, although he did not recall looking at the east door prior to the occurrence, he had not observed any pry marks on the frame or door on the east side of the building on December 18, 1974. He also testified he was not acquainted with the defendant and did not give him permission to enter the sandwich shop on the morning of December 19 or any other time.

Defendant testified he left his brother's house at about 11:30 p.m., after charging his battery with a borrowed battery charger and "just drove around and then well, I was driving, while I was over in the neighborhood where Carol [Mason, his brother's sister-in-law] lives, I just pulled up

there and stopped the car." Insisting he just wished to be alone to think, defendant said he sat in the car, listening to his stereo for about two hours. The defendant admitted his car was parked on the north side of Oak Street, between 11th and 12th Streets. He said he decided to return to his brother's house at about 2 a.m., but his car failed to start. Defendant testified rather than waking Carol Mason, he walked 1½ blocks south on 12th Street to a public telephone, where he phoned his brother. Defendant said his brother agreed to meet him and help start his car, and he returned to his old Ford, tossed his full-length black coat in the back seat, and again played his stereo. The defendant, while returning from the telephone booth, observed a police car when the defendant was at a point north of the Maid Rite Sandwich Shop. He also explained that when Officer Parrish found him lying on the seat of his car, he was leaning over to put a tape in the tape player.

■■■ To convict the defendant of attempted burglary the State must prove, beyond a reasonable doubt, that the defendant intended to knowingly, and without authorization, break and enter into a building, intending to commit a felony or theft therein, and that the defendant had taken a substantial step toward making such an entry. (*People v. Ray* (3d Dist. 1972), 3 Ill. App. 3d 517, 278 N.E.2d 170; *People v. Matthews* (2nd Dist. 1970), 122 Ill. App. 2d 264, 258 N.E.2d 378.) And to prove a crime, the evidence may be entirely circumstantial (*People v. Schabatka* (3d Dist. 1974), 18 Ill. App. 3d 635, 310 N.E.2d 192), for there is no distinction in the law as to the legal weight and effect of circumstantial evidence as opposed to direct evidence (*People v. Robinson* (1958), 14 Ill. 2d 325, 153 N.E.2d 65). Nevertheless, even assuming *ad arguendo* that the defendant in the case at bar possessed the requisite elements of intent necessary to sustain a conviction of burglary, we do not believe that the State has proven beyond a reasonable doubt that the defendant performed any act constituting a substantial step towards the commission of that offense. The State has proven only that the defendant was in the area, walking near the building. It was also proven that a crowbar was found near the building, a screwdriver was found near the intersection by which the defendant passed, pry marks were found on the east door of the sandwich shop and gloves were found in the defendant's car. There is no proof, however, that either the crowbar or screwdriver belonged to the defendant or were ever in his possession. There was no evidence that these were the instruments used to pry at the door. There was no evidence of whether the crowbar and screwdriver were somewhat covered by snow, or appeared to have been dropped after the snowfall. There was no evidence that the gloves found in the defendant's car were used to handle those instruments. Nor is there clear evidence that the pry marks on the east door were not there on the day before. Although these circumstances

arouse a suspicion concerning the defendant's purpose and conduct around the Maid Rite Sandwich Shop, it does not establish the defendant's guilt of attempted burglary beyond a reasonable doubt. See *People v. Ray* (3d Dist. 1972), 3 Ill. App. 3d 517, 278 N.E.2d 170.

Turning our attention to the elements of intent, we find the circumstantial evidence to build such a tenuous chain of inferences that the intent to knowingly break and enter into the building with the accompanying intent to commit a theft or felony therein can not be inferred. The only solid fact supporting the conviction is the set of footprints around some parts of the building and leading to the defendant's car. Even placing the defendant at or near the building, that, in itself, is insufficient to prove that the defendant specifically intended to commit a burglary. Furthermore, the intent to commit a felony or theft in the restaurant can not be attributed to the defendant as part of his mental state merely by proving his presence near the building. Therefore, we are compelled to find that the State failed to prove all of the elements of attempted burglary beyond a reasonable doubt.

Accordingly, the judgment of the Circuit Court of Adams County is reversed.

Reversed.

ALLOY, P. J., and STENGEL, J., concur.