THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES E. MURPHY, Defendant-Appellant.

Third District  No. 77-280

Opinion filed November 15, 1978.—Rehearing denied December 20, 1978.

BARRY, P. J., dissenting.

Frank W. Ralph and Robert Agostinelli, both of State Appellate Defender's Office, of Ottawa, for appellant.

L. Patrick Power, State's Attorney, of Kankakee (Gerry R. Arnold and James E. Hinterlong, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Following a bench trial in the Circuit Court of Kankakee County, defendant was convicted of theft of property having a value in excess of $150. He was sentenced to a term of from one to three years in prison.

Defendant Charles Murphy was an employee of K-Mart A & P Grocery store in the city of Kankakee. On April 12-13, 1976, he was scheduled to work the 10:30 p.m. to 7 a.m. shift along with two other employees, Ulysses Hudson and Michael Graves. It was defendant's job to act as cash register operator during the night shift, but because defendant was one-half hour late for work, Hudson operated the register from 10:30 p.m. to 11 p.m. Defendant operated the register from the time of his arrival until the men broke for lunch at 3 a.m. The men completed lunch at approximately 3:30 a.m. and very shortly thereafter defendant telephoned the Kankakee City Police to report that a robbery had just occurred in which the robber took all the $10 and $20 bills from the cash register.

The police arrived immediately. Officer Steve Williams observed that there were no $10 or $20 bills in the register and asked defendant to write a statement describing the robbery. Defendant said he was too nervous to write down the details of the robbery, but indicated that the robber was a black male who had been in the store twice before that night, once with a pregnant woman. Michael Graves, who was not a witness to the alleged robbery, told police he knew the man who had been in the store with the pregnant woman and that his name was Leon Ross. Tobe Fulford, an assistant manager of the store, arrived on the scene and prepared a cashier's balance sheet for the night which indicated the cash register was $315.82 short.

Defendant accompanied Officer Williams to the police station and gave a written statement describing the robbery. In his statement defendant said that just a minute or two after he had completed lunch a man who had been in the store twice previously during the night came in a third time and demanded all the $10 and $20 bills in the cash register. Defendant said the robber held his right hand on a noticeable bulge in his right coat pocket. Defendant stated he complied with the robber's demand and then started backing away from the register while whistling for help from his fellow employees who were in the rear of the store. Before defendant

left the police station Officer Williams asked for permission to search his auto. Defendant allowed the officer to search the interior of the auto, but denied him permission to search the trunk, explaining that there was a C.B. radio in the trunk for which he had no bill of sale. In the auto's glove compartment Officer Williams found the defendant's wallet which contained $105, including five $20 bills. Defendant explained he had borrowed the money from a college student friend so that he could pay his phone bill.

After investigations by both the Kankakee city police and A & P security, the defendant was charged by information on June 17, 1976, with the offense of theft.

At trial the State presented numerous witnesses. Michael Graves testified that immediately before eating lunch he accompanied the defendant to the store parking lot where the defendant placed a box of cleaning pads which he had purchased into the trunk of his car. Graves noticed nothing, other than a spare tire in defendant's trunk at that time, but did notice a tear in the box of cleaning pads. Graves stated he punched all three men back in from lunch at 3:30 a.m. and then resumed working with Hudson near the rear of the store. Defendant also went to the rear of the store after lunch, but stayed only momentarily before returning to the front cash register area. Ulysses Hudson testified that he followed defendant to the front of the store about one minute later and upon his arrival there defendant, who was hanging up the phone, said they had just been robbed. Both Graves and Hudson testified they did not hear the sound made by the store's automatic doors or the ringing sound made by a cash register anytime after 3:30 a.m.

Bill Ryan, the Kankakee city police dispatcher, who took the robbery report from defendant and who immediately dispatched patrol cars to the scene, testified that he received an earlier call from defendant on the night in question, in which defendant asked what he should do if he saw shoplifters in the store. Officer Charles Nolte testified that three minutes before receiving the robbery dispatch he had driven by the A & P store and visually inspected the cash register area. He saw no one, other than the defendant, in the parking lot or the store.

Leon Ross and his girlfriend testified they were at home in bed together at the time of the alleged robbery. The college student, from whom defendant claimed to have borrowed the money found in his auto, testified he loaned defendant $60 about two weeks before the alleged robbery and two of defendant's creditors testified that defendant owed them a total of slightly more than $300.

■■ Finally, Tobe Fulford, the assistant store manager, testified to the procedure he used in compiling the cashier's balance sheet which was being introduced into evidence. Fulford stated that he counted the

contents of the cash register, recorded most of the figures on the balance sheet and did the computations from which he concluded that the register was over $300 short. However, he admitted that some figures were already on the sheet when he started, specifically those under the "Void Section" and the "Empties Refund" section. The witness did not know who recorded those figures, but testified that in the regular course of business they were entered by the checker on duty. The assistant manager also stated he entered $50 on the balance sheet as the amount of money in the register at the beginning of the shift, but he admitted having no personal knowledge of the actual amount in the register at that time. He testified it was store policy to begin each shift with $50 in the cash drawer. The balance sheet was admitted into evidence as was the cash register tape which recorded the transactions of the register on the night in question.

Defendant first contends that the evidence presented by the State was insufficient to prove any property was actually taken from the A & P Grocery store on April 12-13, 1976. The cashier's balance sheet prepared by assistant manager Fulford on the night in question did indicate the register was $315.82 short and defendant concedes that the majority of that balance sheet was properly admitted into evidence under the past recollection recorded exception to the hearsay rule. (*People v. Jenkins* (1st Dist. 1973), 10 Ill. App. 3d 166, 294 N.E.2d 24.) Nevertheless, defendant argues that certain portions of the balance sheet, specifically those figures under the "Void Section" and the "Empties Refund" section as well as the $50 opening balance figure, were inadmissible hearsay. Furthermore, defendant contends that without these figures in evidence it would have been impossible for the trier of fact to determine how much, if any, money was missing from the A & P store's cash register.

■■ We agree that the figures recorded under the "Void Section" and the "Empties Refund" section of the balance sheet were not admissible as past recollection recorded because they were not recorded by witness Fulford. We also agree that the figures are not admissible as admissions by the defendant because the evidence is insufficient to conclude that defendant, rather than Ulysses Hudson, made those entries. However, we believe that the figures on the balance sheet which were not recorded by Fulford were admissible into evidence under another exception to the hearsay rule. Section 115—5(a) of our Criminal Code of 1961 provides:

> "(a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such

act, transaction, occurrence, or event or within a reasonable time thereafter." Ill. Rev. Stat. 1977, ch. 38, par. 115—5(a).

In the present case, although assistant manager Tobe Fulford had no personal knowledge of who actually entered the challenged figures, he did testify that those figures were entered in the regular course of business by the cashier on duty. We believe this testimony was sufficient to render the voids and refunds figures admissible as business records. We are, of course, aware that the trial court denied admission of the balance sheet as a whole when originally offered by the State as a business record on the grounds that the majority of the sheet was compiled by Fulford as a part of the robbery investigation. Section (c)(2) of 115—5 precludes records made in the course of a criminal investigation from being admitted as business records. However, it is clear that the entries under the "Void Section" and the "Empties Refund" section were not made as part of the investigation since they were already on the sheet when Fulford arrived at the store. Those entries were properly admitted into evidence as business records.

■■ On the other hand, the $50 figure entered by Fulford as the register's opening balance at the beginning of the shift was recorded as part of the robbery investigation and is not admissible as a business record. (Ill. Rev. Stat. 1977, ch. 38, par. 115—5(c)(2).) Nor can the $50 figure be admitted as past recollection recorded since Fulford had no personal knowledge of the figure's accuracy at the time he entered it. Nevertheless, we do not believe defendant was prejudiced by the erroneous admission of the opening balance figure. According to Fulford's computations, using $50 as the opening balance, the balance sheet indicated the cash register was $315.82 short. Defendant· correctly notes that the smaller the opening balance the smaller the cash register's deficit would have been. But, even if the opening balance was zero, the amount most favorable to defendant, the balance sheet would still indicate the register was short by $265.82. That is, even without the opening balance figure, the cashier's balance sheet, read in conjunction with the cash register tape, is sufficient to prove that a significant amount of money was missing from the A & P Grocery store on April 12-13, 1976. Defendant's contention that the evidence was insufficient to prove any property was taken from the store is rejected.

Moreover, defendant's second contention, that the State failed to prove the value of the property taken exceeded $150, is likewise rejected. As previously discussed, we conclude the evidence presented was sufficient to prove that a minimum of $265.82 was missing from the A & P store cash register on the night in question.

Defendant next argues that his admissions were the only evidence presented by the State to prove that a crime was committed in the A & P

Grocery store on April 12-13, 1976. Defendant correctly notes that mere admissions of a defendant are insufficient by themselves to prove the necessary *corpus delicti. (People v. Lueder* (1954), 3 Ill. 2d 487, 121 N.E.2d 743.) According to defendant the only evidence offered to prove the crime in question were the robbery reports given by him to the police and the cash register tape compiled by him as the register operator. He contends that both these pieces of evidence constitute admissions upon which proof of a crime cannot be established.

■■ ■ We agree that defendant's statements to the police, though intended by him to be exculpatory, constitute admissions which will not alone suffice to prove that a crime was committed. (*People v. Mowry* (1955), 6 Ill. 2d 132, 126 N.E.2d 683.) We are also willing to agree *arguendo* that the cash register tape compiled by defendant is an admission by him of the amount of money for which he was responsible as cashier. (See *Hillmer v. Chicago Bank of Commerce* (1940), 375 Ill. 266, 31 N.E.2d 309; *Tate v. Sears Bank & Trust Co.* (1st Dist. 1967), 90 Ill. App. 2d 382, 234 N.E.2d 126.) Nevertheless, we believe that these admissions were sufficiently corroborated by other evidence in the record to prove beyond a reasonable doubt that a crime was committed and that defendant committed it.

■■ It is not necessary that the *corpus delicti* be established beyond a reasonable doubt by evidence independent of admissions or statements of the accused. (*People v. Holmes* (1977), 67 Ill. 2d 236, 367 N.E.2d 663; *People v. Norcutt* (1970), 44 Ill. 2d 256, 255 N.E.2d 442; *People v. Franklin* (1953), 415 Ill. 514, 114 N.E.2d 661.) Our supreme court has aptly summarized the correct rule as follows:

> " 'While it has been held that a defendant's confession, when the *corpus delicti* is not otherwise proved, is insufficient for a conviction, this does not mean that the *corpus delicti* must be proved by the evidence, aside from the confession, beyond a reasonable doubt. On the contrary, it was early held that it is the mere naked confession, uncorroborated by any circumstance inspiring belief in its truth arising out of the conduct of the accused or otherwise, which is held insufficient to convict, and the corroborating fact or facts in proof need not necessarily, independent of the confession, tend to prove the *corpus delicti.* (*Bergen v. People*, 17 Ill. 426.) Direct and positive evidence is unnecessary to prove the *corpus delicti,* (*Campbell v. People*, 159 Ill. 9,) and it is not essential that it should be established by evidence independent of that which tends to connect the accused with its perpetration. The same evidence which tends to prove one may also tend to prove the other, so that the existence of the crime

and the guilt of the defendant may stand together inseparable on one foundation of circumstantial evidence. * * *' " (*Lueder*, 3 Ill. 2d 487, 488.)

Thus, what we must look for is not independent evidence establishing the *corpus delicti*, but evidence which, considered in conjunction with the defendant's admissions, sufficiently establishes the commission of an offense.

In the present case defendant reported to the police that a crime had been committed in which all the $10 and $20 bills were taken from the store's cash register. This report was corroborated by Officer Williams who observed that there were no $10 or $20 bills in the register when he arrived on the scene. Moreover, the cashier's balance sheet prepared by assistant manager Fulford indicated the register was over $300 short and corroborated defendant's statement that money had been taken from the store. It is true that the cash register tape's record of net sales was essential to a determination of whether money was missing from the register. However, it was proper for the trial court to consider both the register tape and the balance sheet in concluding that a crime had been committed. Proof independent of the defendant's statements is not required. "The test is whether the whole evidence proves the fact a crime was committed * * *." (*Franklin* 415 Ill. 514, 519.) We believe that test was met in this case.

We also believe that sufficient evidence was presented to prove defendant was the perpetrator of the crime in question. Defendant's motive and opportunity to commit the crime were adequately established as was the fabricated nature of his robbery report. This court has repeatedly observed that the purpose of review in a criminal case is not to determine whether the record is perfect, but to determine whether the defendant has had a fair trial under the law and whether his conviction is based upon evidence establishing his guilt beyond all reasonable doubt. Based on the evidence in this case we believe the judgment of the Circuit Court of Kankakee County finding defendant guilty of the offense charged should be affirmed.

Affirmed.

SCOTT, J., concurs.

Mr. PRESIDING JUSTICE BARRY, dissenting:

This appeal involves a series of facts which the majority opinion concludes is sufficient to prove defendant Murphy guilty of felony theft beyond a reasonable doubt. I do not agree with that conclusion. I will not

repeat the entire chronology of events, but will only stress the facts which are inconsistent with guilt and require a reversal of defendant's conviction.

Firstly, I agree with the result of the majority opinion that sufficient evidence was presented to show that some uncertain amount of cash was removed from the A & P store cash register in an unlawful manner. I disagree that the evidence supports a verdict that the defendant is guilty of theft of that uncertain amount of cash. The majority correctly states that defendant's reports of a robbery to the police, though intended to be exculpatory, are admissions which can not alone be sufficient to prove that a crime was committed and defendant committed it. But the other evidence in the record does not corroborate or substantiate that defendant committed the theft.

To be specific, the testimony of witnesses other than the defendant clearly indicated that a man fitting defendant's description of the robber had been in the store earlier the same evening. That man, Leon Ross, was known by Michael Graves, another A & P store employee present in the store. Michael Graves testified to Leon Ross being in the store earlier and had obtained some boxes from him. Such evidence is not contradictory of defendant's statements to the police that Ross had been in the store twice that evening, but indeed is corroborative. The majority opinion relies heavily upon testimony of store employees Michael Graves and Ulysses Hudson, that they did not hear the automatic doors open or the ringing of the cash register after they returned from lunch break and before defendant reported the robbery, to support characterization of defendant's report as fabricated. However their testimony was that neither initially could recall if music was playing over the store intercom system, which was customary, and Graves admitted, upon refreshing his recollection with his prior written statement given to the police, that the music was playing. Therefore it is logical to assume that they would not have been able to hear the automatic doors open or the ringing of the cash register, given the added fact that neither Graves or Hudson was in near proximity to the front area of the store or the cash register. They testified they were in the rear of the store, it would appear at least 150 feet from where the robbery was alleged to have taken place. Pursuant to People's exhibit 12, the store measures 100 feet wide and 200 feet long from front to rear with many shelves and stacks of groceries to restrict view and muffle the sound. The physical position of Graves and Hudson and the fact that music was playing more than adequately explains both witnesses inability to hear the doors open or the cash register bell.

Equally unconvincing is the majority's reliance upon the denominations of the bills taken and the debts of the defendant Murphy. Only $105 was

found in defendant's wallet. Of that there were five $20 bills and a $5 bill. This amount is considerably less than the projected amount missing. Clearly it is not unusual or incriminating to possess that amount of money in one's wallet in those denominations. The debts of defendant are also not supportive of defendant's guilt, and his financial position and debts, which may supply a motive, do not coincide with the alleged amount of money missing from the cash register.

Also it should be pointed out that although Graves testified that defendant placed an open box of cleaning pads which defendant purchased in the trunk of defendant's car at lunch break, no search of the car trunk was ordered. A search warrant was not obtained nor was a search made incident to defendant's arrest. Defendant did refuse to consent to a search of his auto trunk. Such is his constitutional right and that by itself should carry no adverse inferences. Defendant's refusal to consent to the immediate search of his auto trunk was qualified, however, by his agreement to allow a search of it if he were allowed to take the car home and remove a C.B. radio for which he had no receipt.

I perceive the proper test in a case such as this to be whether the whole evidence proves the fact that the crime was committed and that the defendant committed it. (*People v. Brown* (1942), 379 Ill. 262, 40 N.E.2d 66.) I believe this test has not been met; that the proof failed to establish that defendant committed the theft. (*People v. Toolate* (4th Dist. 1976), 45 Ill. App. 3d 567, 359 N.E.2d 1062; *People v. McCarty* (4th Dist. 1976), 41 Ill. App. 3d 213, 354 N.E.2d 74.) It is true that inferences to be drawn from the evidence are within the province of the trier of fact, but a reviewing court may not accept such inferences where unquestionably a reasonable doubt lingers as to the guilt of the defendant. (*People v. Dunham* (1973), 13 Ill. App. 3d 784, 300 N.E.2d 382.) The absence of proof beyond a reasonable doubt that the defendant was the perpetrator of the crime demands a reversal of this conviction.