THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RUDOLPH WILLIAMS, Defendant-Appellant.

First District (1st Division)   No. 1—87—1804

Opinion filed September 18, 1989.

Randolph N. Stone, Public Defender, of Chicago (Karen A. Popek, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Joseph G. Howard, and Francis N. Scescke, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Following a bench trial, defendant, Rudolph Williams, was convicted of attempted burglary (Ill. Rev. Stat. 1985, ch. 38, par. 8—4(a)) of an automobile and sentenced to five years in prison. On appeal, defendant contends that: (1) the State failed to prove him guilty of attempted burglary beyond a reasonable doubt; (2) the trial court erred in refusing to advise him of his right to elect treatment for drug addiction pursuant to section 22 of the Alcoholism and Substance Abuse Act (Ill. Rev. Stat. 1985, ch. 111½, par. 6322)[1]; and (3) the maximum sentence of five years' imprisonment was excessive under the circumstances of the offense. For the following reasons, the judgment of the circuit court is reversed.

The record sets forth the following facts relevant to this appeal. Aco Lazarevski, owner of the subject automobile, testified that on September 12, 1986, approximately 12:40 p.m., he was working at his brother-in-law's hotdog stand when he heard his car alarm go off. His car was parked on the corner near the stand. Aco immediately looked

---

[1]Effective July 1, 1988, the Alcoholism and Substance Abuse Act was repealed and replaced by the Illinois Alcoholism and Other Drug Dependency Act (Ill. Rev. Stat. 1987, ch. 111½ , par. 6351—1 et seq.). However, because the effective date of the new act is subsequent to the date of sentencing in the present case, the new act is not applicable to this appeal. *People v. Teschner* (1980), 81 Ill. 2d 187, 407 N.E.2d 49.

out the window and saw defendant standing next to his car with his hand on the trunk. Defendant then turned and started to walk away. Recognizing defendant from around the neighborhood, Aco ran up to him and asked him what he had done to the trunk. Defendant claimed he had not done anything.

When Aco tried to open the trunk of his car with his trunk key, he noticed that the emblem which covered the trunk key slot was moved off the slot and the trunk would not open. While Aco was examining his trunk, defendant continued to walk away. Aco then saw a police officer writing tickets nearby, asked him to come over to the car, and told the officer what had happened, pointing to defendant, who was walking away. The officer caught up with defendant, brought him back to the car and asked him what he had done to the car and how he had done it. Defendant said nothing.

According to Aco, defendant promised to give him the money to fix the trunk if Aco agreed not to press charges. Aco agreed and told defendant to get $70. Defendant left, promising to return in one-half hour. However, he never returned. Aco further testified that after defendant and the first police officer left, he spoke with Officer Opyt of the Chicago police department and told him what had happened.

Eight days later, Aco saw defendant walking across the street from the hotdog stand. He ran outside, flagged down a squad car, and had defendant arrested. According to Aco, defendant told him that he had not brought the cash because he had been in the hospital. On cross-examination, Aco stated that he had seen defendant's hand on the trunk, but had not seen anything in his hand. The State rested its case and defendant's motion for a directed verdict was denied.

Next, defendant testified on his own behalf that on September 12, 1986, approximately 12:40 p.m., Aco came up to him and asked him if he had gone into his car. Defendant told Aco he had not and started to walk away. Defendant stated that prior to Aco's questioning, he had been regurgitating a short distance away from Aco's car and had never even heard a car alarm. Approximately five minutes later, Aco approached defendant again, this time accompanied by a police officer who walked defendant back to Aco's car. Aco then handed defendant a key and asked him to try to get into his trunk. However, the trunk would not open.

Defendant further stated that Aco promised he would not press charges if defendant gave him $100. Defendant left to get the money, but never returned. On cross-examination, defendant denied ever having touched Aco's car and claimed that he had never seen anyone else touch it either.

Next, Officer Frank Opyt testified that on September 12, 1986, he investigated the alleged attempted burglary of Aco's car. In doing so, he first spoke to Aco, who told him that someone had broken into his trunk with a screwdriver. At that time, Aco told Opyt that he knew who the offender was and that the offender had promised to pay for the damages to the car. However, Opyt did not include this financial arrangement in his report.

Following defense counsel's closing argument, the trial court found defendant guilty of attempted burglary. Approximately two weeks later at the sentencing hearing, the trial court denied defendant's motion for a new trial. In aggravation, the State argued that defendant has numerous felony and misdemeanor convictions and has demonstrated little potential for rehabilitation. In mitigation, defense counsel stated that defendant had been out of prison since 1981, was currently employed, and lived with his parents. Defense counsel requested probation, noting that the probation department stated in its proposed plan for supervision that if the court sentenced defendant to probation, the department recommended maximum supervision with emphasis on drug rehabilitation. The trial court sentenced defendant to the maximum prison term of five years. Defendant's timely appeal followed.

■■■ Initially, defendant argues that the State failed to prove that he was guilty of attempted burglary beyond a reasonable doubt. The crime of attempt is defined by section 8—4(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 8—4(a)) as:

"A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense."

Pursuant to section 19—1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 19—1(a)):

"A person commits burglary when without authority he knowingly enters or without authority remains within a *** motor vehicle as defined in The Illinois Vehicle Code, *** or any part thereof, with intent to commit therein a felony or theft."

Therefore, pursuant to the Code, in proving the offense of attempted burglary, the State has the burden of proving that defendant intended to commit the offense of burglary and that he performed an act which constituted a substantial step toward the commission of the burglary. The offense of attempt must frequently be proven by circumstantial evidence, including the words and actions of the accused. This evidence must produce a reasonable and moral certainty that the accused

committed the crime. If there is a reasonable explanation for the circumstances which is consistent with innocence and, thus, leaves a serious doubt of the accused's guilt, then a conviction cannot stand. (*People v. Delp* (1980), 85 Ill. App. 3d 463, 406 N.E.2d 903.) Although it is not incumbent upon the accused to explain his presence at or near the scene of a crime, if he does offer an explanation, his story must be reasonable or he will be judged by the improbability of the explanation. (*People v. Spagnolia* (1961), 21 Ill. 2d 455, 173 N.E.2d 431.) Mere presence at a scene is not enough in itself to sustain a conviction. However, if that presence is coupled with defendant's flight upon being seen by another, these two factors may tend to establish defendant's guilt. *People v. Delp* (1980), 85 Ill. App. 3d 463, 406 N.E.2d 903.

In the present case, there are two conflicting stories as to the events that occurred on September 12, 1986. One version is that testified to by Aco and the other is that testified to by defendant. Although it is within the province of the trier of fact to assess the credibility of witnesses and to resolve conflicts in testimony (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267), the reviewing court will reverse a conviction where the evidence is confused and conflicting on vital questions of fact (*People v. Butler* (1963), 28 Ill. 2d 88, 190 N.E.2d 800) and is so unsatisfactory as to raise a reasonable doubt as to defendant's guilt. *People v. Pellegrino* (1964), 30 Ill. 2d 331, 196 N.E.2d 670.

In the present case, Aco Lazarevski testified that while working at his brother-in-law's hotdog stand, he heard his car alarm go off, looked out the window and saw defendant with his hand on the car trunk. When Aco went outside, defendant was walking away. Aco caught up with defendant, asked him what he had done to his car, and defendant replied "nothing." Aco then walked back to his car, noticed the key to the trunk would not work and called over a police officer who was writing tickets nearby. The officer allegedly was with Aco and defendant when defendant offered to pay for any damage if Aco would not press charges.

In our view, these facts are of questionable certainty. First, if the police officer was standing nearby, it seems likely he would have heard the car alarm had it actually gone off and would have seen defendant standing next to the trunk. Yet, there is no indication that the officer saw or heard anything. Second, it is unlikely that defendant would have been trying to pry open the trunk at lunch time on a busy street with a police officer nearby writing tickets. Third, defendant made no attempt to flee when Aco came outside. Defendant

claims that he had been standing away from the cars regurgitating, then walked back toward the street. He further claims that he never heard a car alarm. Fourth, although there was allegedly a police officer present, there is no corroborating evidence that defendant promised to pay for any damage to the trunk. Defendant claims Aco asked him for some money and told him to get it, which defendant never did. Finally, when defendant did not return, Aco told his story to another officer. No complaint was filed with either police officer although Aco testified that he had recognized defendant from the neighborhood.

Aco also relies extensively on defendant's alleged "admission" and his offer to pay for any damages. Although an admission is substantive evidence of a defendant's guilt (*People v. Ellis* (1976), 41 Ill. App. 3d 377, 190 N.E.2d 595), the only evidence of an admission by defendant is Aco's self-serving testimony. Contrary to Aco's testimony, defendant testified that Aco had asked him for some money; he had not volunteered to pay. Thus, in our view, there is reasonable uncertainty as to whether defendant had ever admitted to trying to get into the trunk.

We find the lack of sufficient circumstantial evidence of defendant's guilt in the present case to be similar to the situations in *People v. Delp* (1980), 85 Ill. App. 3d 463, 406 N.E.2d 903, and in *People v. Toolate* (1976), 45 Ill. App. 3d 567, 359 N.E.2d 1062, in which the courts reversed the respective convictions for attempted burglary. In *Delp*, at approximately 10 p.m., while on patrol, a police officer saw defendant standing next to an automobile in a parking lot, bent over a car. The officer noticed a shiny object protruding from defendant's body. Suspicious of what defendant was doing, the officer drove into the parking lot. Defendant crouched down momentarily and then ran into the shadows of a nearby building. The officer directed a spotlight into the area where defendant had run, saw defendant, and ordered him to come out. Defendant told him he had run to the building to relieve himself. The officer searched defendant, but found nothing. He then searched the corner of the building where defendant had been crouched and found a bent auto antenna and a screwdriver. The officer saw scratch marks on the car's side window and on the molding, and the bent antenna was discovered to be part of one that had been broken off of another car in the parking lot.

At trial, the officer admitted that he had never seen defendant in actual possession of the screwdriver or the antenna. In addition, the owner of the car testified that she had not noticed any damage to her car. The jury entered a verdict of guilty of attempted burglary and

possession of burglary tools. On review, the court reversed the trial court's judgment on the ground that the evidence relied upon by the State was not of such a nature as to produce a reasonable and moral certainty that the defendant had committed the offense charged.

In the present case, no screwdriver was found, there was no testimony of any physical damage to the car such as scratches or punches and defendant had not attempted to flee or to hide. As a result, there is even less evidence to establish defendant's guilt than there was in *Delp*.

Similarly, in *People v. Toolate* (1976), 45 Ill. App. 3d 567, 359 N.E.2d 1062, a police officer spotted defendant walking on the sidewalk in the early morning hours of December 19, 1974. He had shoulder-length dark hair and was wearing a full-length black coat. Defendant did not quicken his pace when the patrol car passed by. The officer then drove into the parking lot adjacent to a sandwich shop and noticed fresh cuts at the lock on the front door of the sandwich shop with fresh wood fibers lying on the ground. He notified the police station, drove back to the intersection from where he had just come, and got out of his car. There were fresh footprints in the snow. The officer followed the footprints to a 1963 Ford parked nearby. When the officer opened the car door, he saw defendant sprawled across the front seat and his coat was lying in the back seat. While backtracking the footprints, another officer found a screwdriver lying in the snow. The officer also found the same fresh footprints on the west and north sides of the sandwich shop. On the east side of the building, the snow had either melted or cleared. The officer then discovered a crowbar lying in the parking lot.

Defendant testified that he had been at his brother's house, after which he had just driven around. He felt like being alone, so he had been sitting in his car, listening to the radio, for about two hours. He then decided to return to his brother's house, but the car would not start. As a result, he called his brother to come pick him up and was waiting for him when the police arrived.

Following a bench trial, defendant was convicted of attempted burglary. The reviewing court reversed, stating that the State had merely proved that defendant was in the area, walking near the building. There was no proof that either the screwdriver or the crowbar belonged to defendant or were ever in his possession. There was also no evidence that those items were used to pry the door or when they might have been used. The *Toolate* court acknowledged that the circumstances might cast suspicion on defendant, but they did not establish defendant's guilt beyond a reasonable doubt.

Once again, in the present case, we find that there is even less conclusive evidence as to defendant's guilt than in *Toolate*. No instrument which could have been used for tampering with the lock was ever found and there was no physical damage to the lock. Accordingly, we conclude that the evidence does not establish defendant's guilt beyond a reasonable doubt and the trial court's judgment should be reversed. This decision obviates the need to address the remaining issues.

For the aforementioned reasons, the judgment of the circuit court of Cook County is reversed.

Reversed.

MANNING, P.J., and O'CONNOR, J., concur.