(No. 48593.-

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ANTHONY HOLMES, Appellee.

*Opinion filed May 20, 1977.—Rehearing denied October 3, 1977.*

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B. Zagel and Jayne A. Carr, Assistant Attorneys General, of Chicago, and Laurence J. Bolon and Linda Ann Miller, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (Robert B. Thompson, Ronald P. Alwin, Dale W. Broeder, William Murphy, and Larry Sufferdin, Assistant Public Defenders, of counsel), for appellee.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

In a bench trial in the circuit court of Cook County, defendant, Anthony Holmes, was convicted of the murder of Joseph Murphy. The appellate court reversed (38 Ill. App. 3d 122), and we allowed the People's petition for leave to appeal. The facts are stated in the opinion of the

appellate court and will be repeated here only to the extent necessary to the discussion of the issues.

Joseph Murphy was shot to death in the Bus Stop Lounge. The only evidence which connected defendant with the occurrence was his confession in which he said that he had driven four companions to the Bus Stop Lounge, that he remained in the automobile while the four men walked around the corner, he heard gunshots, and his companions returned to the car and said "It's done." He stated that approximately a month earlier he and his four companions and another man had discussed Murphy, who was a prospective witness in a murder case pending against Luther Coburn, defendant's brother-in-law. The men at the meeting told defendant that they would put a "hit" on Murphy because he intended to testify against Coburn. On the night of the shooting defendant received a telephone call from one of the men who had been at the meeting and was told "We're fixing to make a run." Defendant defined "run" as "going to see some chick" or "going to stick somebody up or something like that." After receiving the call, defendant picked up his four companions, and after making a stop at the Crystal Lounge, defendant drove to the Bus Stop Lounge.

In reversing the conviction the appellate court, holding that the People failed to establish the *corpus delicti* of the crime of murder *aliunde* the confession, said: "In order to convict the defendant of murder, the State had to establish by evidence *aliunde* the confession that the accused conspired with other individuals to kill Joseph Murphy. Here the prosecution failed to establish that defendant was guilty of conspiracy because they failed to establish by way of extrinsic evidence that would corroborate the confession that an overt act was committed by defendant in carrying out the conspiracy. [Citation.] Unless the State can establish the existence of a conspiracy, defendant, as a conspirator, would not be liable

for the acts of his co-conspirators." 38 Ill. App. 3d 122, 125-26.

The People contend that the appellate court erred in holding that the evidence failed to prove the *corpus delicti* of murder. They argue that the evidence, independent of defendant's confession, shows both that the death of Joseph Murphy had occurred and that his death was caused by the criminal agency of some person, and that this was sufficient proof of the *corpus delicti*. They argue further that the record contains substantial evidence corroborative of the defendant's confession.

Defendant, although urging affirmance of the judgment, concedes that he cannot support the position taken by the appellate court and contends that the People "failed to prove the *corpus delicti* of the crime of accountability-murder." Defendant's position, simply stated, is that the People failed to prove *aliunde* the confession a third essential element of "accountability-murder"—that some person committed an act for which defendant was accountable.

From our review of the authorities we conclude that the appellate court erred in its holding. "The *corpus delicti* of the crime of murder consists of two essential elements: the fact of death, and the fact that the death was produced by the criminal agency of some person." (*People v. Melquist,* 26 Ill. 2d 22, 28.) Here the *corpus delicti* of murder was proved by evidence totally independent of defendant's confession. Charles Norris, the bartender at the Bus Stop Lounge, testified that Murphy was shot while opening the door for someone and the defense stipulated that he died as a result of these wounds. *People v. Lueder,* 3 Ill. 2d 487, upon which defendant principally relies, is clearly distinguishable. In *Lueder,* although there was proof that a building had burned, there was no evidence, except the confession, to show the wilful burning of the building. In *People v. Norcutt,* 44 Ill. 2d 256, in rejecting

an argument similar to that made here, the court said:

"The *** contention is that the verdict must be set aside because there was no evidence apart from the confession tending to show that defendant committed the crimes charged. That is not a requirement under our decisions, however. While a conviction cannot be based on a confession alone, the other evidence in the case need not be sufficient by itself to connect the defendant to the offense. (*People v. Lueder*, 3 Ill. 2d 487, 488-9; *People v. Jones*, 26 Ill. 2d 381, 385-7.) It is enough if the other evidence either tends to show that a crime did in fact occur (see, *e.g.*, *People v. Bishop*, 359 Ill. 112, 114-15,) or to corroborate the confession (see, *e.g.*, *People v. O'Neil*, 18 Ill. 2d 461)." 44 Ill. 2d 256, 263.

In support of his contention that the People failed to prove the commission of conduct for which he could be held accountable, defendant argues that even if the *corpus delicti* were proved defendant's statement did not clearly establish that when he drove them to the Bus Stop Lounge he knew that his passengers intended to murder Joseph Murphy. Proof of such knowledge, he argues, is a necessary element to hold him accountable. We do not agree. The confession shows that this same group had discussed killing Murphy approximately a month prior to the shooting. "It is also well settled that proof of a common design or purpose can be drawn from the circumstances surrounding the commission of the act." (*People v. Nowak*, 45 Ill. 2d 158, 169.) Defendant drove to the vicinity of the Bus Stop Lounge, parked his car around the corner, and waited for his passengers to return. While defendant did not state that he knew why the others went into the lounge, his statement is consistent with such knowledge, and his waiting in the car was consistent with a plan for a speedy departure from the area.

Defendant also argues that the People failed to corroborate and offer proof concerning numerous details in his confession which were easily verified. Even though within its power to prove, the People failed to present evidence concerning the following details in Holmes' confession: that Luther Coburn was defendant's brother-in-law; that defendant and his companions, before going to the Bus Stop Lounge, had been in the Crystal Lounge; that defendant drove or owned a beige Buick Electra; and that Murphy was killed by bullets from either a .32- or .38-caliber revolver. Defendant argues too that a negative inference can be drawn from the People's failure to call any of the other 19 people who were in the Bus Stop Lounge the night of the murder. Although we agree that it might have been desirable to offer testimony on some of these matters, the failure to do so is not fatal to the People's case. The fact that Luther Coburn was indicted for a murder which occurred in Murphy's Bus Stop Lounge and that Murphy was expected to be a witness for the People corroborated an important part of defendant's confession and established a motive for the murder. The evidence was sufficient to sustain the conviction and the judgment of the appellate court is reversed.

*Appellate court reversed;*
*circuit court affirmed.*