(No. 74668.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. THOMAS WEST, Appellee.

*Opinion filed February 3, 1994.*

Roland W. Burris, Attorney General, of Springfield, and Michael J. Waller, State's Attorney, of Waukegan (Rosalyn B. Kaplan, Solicitor General, and Terence M. Madsen and Michael A. Hurst, Assistant Attorneys General, of Chicago, and Norbert J. Goetten, John X. Breslin and Judith Z. Kelly, of the Office of the State's Attorneys Appellate Prosecutor, of Ottawa, of counsel), for the People.

Robert Agostinelli, Deputy Defender, and Mark D. Fisher, Assistant Defender, of the Office of the State Appellate Defender, of Ottawa, for appellee.

JUSTICE NICKELS delivered the opinion of the court:

Defendant, Thomas West, was tried by a jury in the circuit court of Lake County and convicted on two counts of aggravated criminal sexual abuse (Ill. Rev. Stat. 1989,

ch. 38, par. 12—16(c)(1)(i)). One count alleged that defendant rubbed his penis against victim's buttocks, while the other alleged that he rubbed her pubic area with his hand. The trial court sentenced defendant to a term of three years in the Department of Corrections. The appellate court reversed. 234 Ill. App. 3d 578.

Prior to trial, defendant filed a motion *in limine* to exclude part of the testimony of Officer Ralph Henriquez. Henriquez interviewed complainant, S.W., on the day of the alleged abuse and intended to testify as to hearsay statements she made to him on that occasion. At trial, the judge conducted a hearing, outside the presence of the jury, to determine whether this testimony was reliable, as required by section 115—10 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 115—10). The trial court found the hearsay statements to be reliable and allowed Officer Henriquez to testify about them before the jury.

Prior to trial, defendant also made a motion to suppress a written statement which he had signed in the presence of Officer Henriquez. The trial court conducted a hearing on defendant's motion to suppress. At the hearing, Henriquez testified that defendant made the statement after being given *Miranda* warnings and that defendant had not been coerced into signing the statement. Defendant testified that he signed the statement only because Henriquez told him he would be treated more leniently if he did. On cross-examination, defendant acknowledged that Henriquez had not used threats to convince him to sign. The trial court denied the motion to suppress.

At trial, complainant, S.W., testified that on August 30, 1989, she resided with several relatives, one of whom was defendant, her uncle. S.W. stated that, on that day, she was in the basement of her house, looking for some clothes to wear. While she was looking for clothes, de-

fendant entered the basement from upstairs to do his laundry. According to S.W., after starting the washing machine, defendant went to his room, which was also located in the basement, came out, and showed S.W. several pictures of a naked woman.

S.W. testified further that after showing her these pictures, defendant approached her and touched her "behind" with his penis. She was fully clothed during the alleged incident. S.W. testified that, after the incident, defendant called her over to his bedroom. S.W. went over to the curtain partition that served as the door to his room, where she saw defendant with his pants down, exposing his penis to her. According to S.W., defendant signaled her to come to him, but she became frightened and ran upstairs. In response to defendant's questioning on cross-examination, S.W. stated that defendant did not touch her anywhere else.

David W., S.W.'s father, testified that on August 30, he received a call at work from his son, David, Jr. David, Jr., told his father that defendant had fondled S.W. in some way. David W. told his son to accompany S.W. to his fiancee's house, and he would meet them both soon. The police were later notified.

Officer Henriquez testified that he interviewed S.W. at the Waukegan police department at about 8 p.m. on August 30. S.W. told Henriquez she was playing downstairs when defendant came down to do his laundry. After S.W. had helped defendant with the laundry, defendant "walked up behind her and bumped up against her." In addition, S.W. told Henriquez that defendant "bumped his private part against her rear private part." S.W. also told Henriquez that defendant placed his hands on her stomach and over her pubic area. Henriquez testified that, after touching S.W., defendant showed her pictures of a naked woman. Later, defendant called S.W. over to his room and exposed his penis

to her. S.W. told Henriquez that defendant then gestured for her to come to him, but she became frightened and ran upstairs.

Henriquez testified that he next interviewed defendant. Henriquez told defendant about the conversation he had had with S.W. and asked defendant if her statements were true. According to Henriquez, defendant admitted S.W.'s statements were true. Henriquez testified that he then typed a statement which defendant signed. In the statement, defendant admitted rubbing his penis against S.W.'s buttocks and rubbing her pubic area with his hand.

Defendant called several witnesses at trial, mostly family members, who testified that S.W. had told them each a different version of the event. Patricia Hagler, defendant's sister, testified that S.W. twice denied to her that defendant had touched her. Bianca Jones, another of defendant's sisters, testified that S.W. denied that defendant molested or touched her but, rather, had only bumped her. S.W. also told Jones that defendant's pants were down "a little bit." On cross-examination, Jones testified that S.W. told her that defendant had "bumped up against" S.W. with his penis.

David Asma, an investigator with the Lake County public defender's office, testified that he spoke to S.W. in the presence of her father. S.W. told Asma that defendant showed her pictures of a naked woman but denied that defendant had touched her at all. Polly W., defendant's mother, testified that she was present when Asma interviewed S.W. She heard S.W. say that defendant bumped her, but S.W. did not say that defendant rubbed against her with his penis.

Defendant was convicted on both counts of aggravated criminal sexual abuse. Defendant appealed, and the appellate court reversed the convictions. The State raises two issues on review: (1) whether a defendant

should be allowed to elicit opinion evidence or evidence of past instances of untruthfulness when impeaching a child witness for truthfulness; and (2) whether section 115—10 requires a trial court to specifically state its reasons for finding hearsay statements reliable before admitting them. Defendant raises an issue for review if we decide that the trial court was not required to state its reasons for finding reliability. In such instance, defendant urges us to find that S.W.'s statements to Henriquez were unreliable.

## I

The State first argues that the appellate court erred in finding that a portion of Bianca Jones' testimony was improperly excluded. The relevant part of the direct examination was as follows:

"Q. [Assistant Public Defender]: Did [S.W.] ever tell you that Thomas rubbed his penis against her?

A. [Bianca Jones]: She said Tommy bumped up against her.

Q. Is that all she said?

A. She said that Tommy had bumped up against her and that she—I don't know if she had it like Tommy was inside his room because Tommy's room is partitioned off in the basement with a curtain. She said that she had saw Tommy [sic] pants down. I asked her how far. She said a little bit.

Q. Have you spent any time with [S.W.] alone, just the two of you, before this date?

A. [S.W.] visits my house, yes, spends the night.

Q. Has [S.W.] ever exaggerated the truth to you before?

MR. CHANCEY [Assistant State's Attorney]: Objection.

THE COURT: Sustained.

Q. When you talked to [S.W.], was that before the police arrived?

A. Yes.

MR. APPELBAUM [Assistant Public Defender]: No other questions."

The appellate court held that the objection should

not have been sustained because S.W.'s credibility is an important issue in this case. The State argues that defendant could properly attempt to impeach S.W.'s credibility but that defendant did so in an improper manner here. Defendant sought to impeach S.W.'s reputation for truthfulness, the State contends, but the question asked was not intended to elicit reputation evidence. Instead, defendant sought to improperly elicit opinion evidence or evidence of past instances of untruthfulness. Thus, the State argues, the trial court properly sustained the State's objection.

In Illinois, it is well settled that the proper procedure for impeaching a witness' reputation for truthfulness is through the use of reputation evidence. (*People v. Williams* (1990), 139 Ill. 2d 1, 21.) The question asked here clearly was not intended to elicit reputation evidence. Defendant argues, however, that this court has implicitly approved the use of opinion evidence and evidence of specific acts of untruthfulness in cases involving children who are too young to have developed a reputation. (See *People v. Schott* (1991), 145 Ill. 2d 188; *People v. Morgan* (1977), 69 Ill. 2d 200.) *Schott* and *Morgan* are inapposite in this situation. In both of those cases, complainants were impeached primarily through the use of prior inconsistent statements, not through reputation for truthfulness.

Moreover, this court recently held that the general rule requiring reputation evidence applies to all witnesses, regardless of age. (*Williams*, 139 Ill. 2d 1.) In *Williams*, this court considered whether the complainant's seventh and eighth grade teachers could have testified at trial that the complainant was an "inveterate liar." (*Williams*, 139 Ill. 2d at 20.) This court stated that this sort of opinion evidence is inadmissible, even though the complainant in that case was an 11-year-old child. This court concluded: "In *all* cases, the proper

procedure to introduce evidence of truthfulness is to ask the witness whether he knows the general reputation [for truthfulness in the community].'' (Emphasis added.) (*Williams*, 139 Ill. 2d at 21, citing M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 608.3 (5th ed. 1990).) Defendant failed to ask Jones whether she knew S.W.'s general reputation in the community. Thus, the trial court properly sustained the State's objection, which excluded the testimony, and the appellate court erred in reversing the trial court.

## II

The State's second contention on appeal is that the appellate court erred in requiring the trial court to specifically state reasons for its finding of reliability after a section 115—10 hearing. Section 115—10 provides:

"(a) In a prosecution for a sexual act perpetrated upon a child under the age of 13, including but not limited to prosecutions for violations of Sections 12—13 through 12—16 of the Criminal Code of 1961, the following evidence shall be admitted as an exception to the hearsay rule:

(1) testimony by such child of an out of court statement made by such child that he or she complained of such act to another; and

(2) testimony of an out of court statement made by such child describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual act perpetrated upon a child.

(b) Such testimony shall only be admitted if:

(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child ***

(A) Testifies at the proceeding.'' Ill. Rev. Stat. 1989, ch. 38, pars. 115—10(a), (b).

The plain language of section 115—10 requires only

that the court conduct a hearing and make a finding "that the time, content, and circumstances of the statement provide sufficient safeguards of reliability." It does not require that the trial court state the reasons for its finding. Furthermore, we find no need to create such a requirement.

In this case, the trial court conducted a hearing in which Officer Henriquez described the method and setting of his interview with S.W. Defendant was given the opportunity to cross-examine Henriquez and adduce the circumstances surrounding the interview that would suggest unreliability. All the pertinent circumstances were before the trial court. These circumstances are clear from the record and thus allow effective review. A brief explanation of the reasons for the determination would have been appropriate, but is not required. Therefore, the appellate court erred in requiring the trial court to state the reasons for its finding.

### III

Defendant argues that, if a remand is not necessary for the trial court to state its reasons for its finding of reliability, the record indicates that S.W.'s statements to Henriquez were not reliable. When conducting a reliability determination, a trial court evaluates the totality of the circumstances surrounding the making of hearsay statements. (See *People v. Back* (1992), 239 Ill. App. 3d 44, 57; *People v. Kerns* (1992), 229 Ill. App. 3d 938, 942; *People v. McMillan* (1992), 231 Ill. App. 3d 1022, 1033.) Some factors that are important in making the determination include: the child's spontaneous and consistent repetition of the incident, the child's mental state, use of terminology unexpected of a child of similar age, and the lack of a motive to fabricate. (*People v. Zwart* (1992), 151 Ill. 2d 37, 44-45.) A trial court has a considerable amount of discretion in determining the admissibility of hearsay statements. (*Zwart*, 151 Ill. 2d

at 44.) Thus, a reviewing court will not disturb a trial court's finding absent an abuse of discretion. *Zwart*, 151 Ill. 2d at 44.

Upon reviewing the record, we cannot say that the trial court abused its discretion. First, we consider the timing of the statements. S.W. talked to Officer Henriquez about the incident only a few hours after it occurred. Before talking to Officer Henriquez, however, S.W. talked to several adult family members. Defendant contends that this constitutes the sort of "substantial adult intervention" that this court found objectionable in *Zwart*, 151 Ill. 2d at 46.

In *Zwart*, before the complainant made any statements implicating the defendant, she talked with a police officer, a Department of Children and Family Services' worker, and a counselor at Mount Sinai Hospital. The State did not introduce any evidence about the substance of these discussions. Therefore, the court was concerned that these adults might have convinced the victim that the defendant had abused her when, in fact, he had not. (*Zwart*, 151 Ill. 2d at 44-45.) In this case, S.W. implicated defendant immediately. In addition, most of the adults who talked with S.W. before she talked with Henriquez were called as witnesses and testified as to the substance of their conversations with S.W.

Next, we examine the content of S.W.'s statements. Many of S.W.'s statements are consistent with her testimony and that of other witnesses at trial. During the reliability hearing, Henriquez testified that defendant showed S.W. pictures of a naked woman, that defendant touched her on the buttocks, and that defendant exposed himself to S.W. These statements were consistent with S.W.'s testimony at trial, as well as some of the testimony of defense witnesses. Also, during the interview, S.W. used language consistent with that expected of a seven-year-old child.

Other circumstances support the finding of reliability. Henriquez's questioning during the interview was open-ended, the record does not suggest any motive on S.W.'s part to fabricate the allegations, and nothing in the record suggests that the interview was coercive or threatening. This court recently held, under similar circumstances, that a trial court properly admitted a detective's testimony, based on a victim's out-of-court statements. (See *People v. Wittenmyer* (1992), 151 Ill. 2d 175, 187.) The victim in *Wittenmyer* also testified at trial, as S.W. has done here.

For these reasons, we cannot say that the trial court abused its discretion. A number of factors support its determination. The judgment of the appellate court is reversed, and the judgment of the circuit court of Lake County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*