Third Division
March 31, 2011

1-09-1326

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | 05 CR 6444 |
| | ) | |
| JASON LARA, | ) | Honorable |
| | ) | Kenneth J. Wadas, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE NEVILLE delivered the judgment of the court, with opinion.
Justice Steele concurred in the judgment and opinion.
Justice Murphy specially concurred, with opinion.

### OPINION

A jury found the defendant, Jason Lara, guilty of two counts of predatory criminal sexual assault (PCSA) for inserting his finger into the vagina of an eight-year-old girl, J.O. On appeal, Jason argues that the State failed to prove the *corpus delicti* of the offense, because the State failed to present any evidence corroborating Jason's confession that he put his finger inside J.O. We agree. The State's evidence, apart from the confession, supported a finding of only the lesser-included offense of aggravated criminal sexual abuse (ACSA). Accordingly, we vacate Jason's convictions for PCSA, reduce Jason's convictions for PCSA to convictions for ACSA, and remand for sentencing on the ACSA convictions.

### BACKGROUND

Augustina P. had two children, J.O. and C.A. Augustina, who worked many evenings, often

asked her friend, Shelley Lara, to look after her two children. Sometimes J.O. and C.A. slept at Shelley's home, where Shelley's son, Jason, also slept. Augustina began dating John Cordero after she separated from her husband, Phillip A., who was C.A.'s father.

On February 11, 2005, Jason told Cordero that once, when Phillip A. came to visit, Jason heard sounds of licking and sucking coming from a room where Phillip A. and J.O. were alone together. On February 17, 2005, Cordero and Augustina went out for a few drinks after Augustina got off work. Cordero told Augustina what Jason had said.

The following morning, Augustina asked Cordero to talk to J.O. about the matter. Augustina's sister brought J.O. and C.A. to Cordero's home, before school. Cordero took J.O. into a bedroom and asked her if Phillip had ever touched her in a way that made her uncomfortable. J.O. said, "Yes, he has but it wasn't Phillip." Instead, J.O. said Jason had touched her inappropriately.

Augustina came into the bedroom to talk to J.O., and again J.O. said Jason, not Phillip, had touched her "private part." Augustina called Shelley and the police. Shelley and Jason came to Cordero's home. Police officers arrested Jason.

Carey Kato, a forensic interviewer working for the Children's Advocacy Center, interviewed J.O. later that day. J.O. said that on two occasions about a month earlier, Jason had touched her "private part." She pointed to her vagina. J.O. explained that when she and her sister slept at Shelley's home, they would sleep on the floor next to the bed in the living room where Jason slept. One night she woke up to find her pants and underpants pulled down to her knees, and Jason's hand resting on her "private part." A few days later, when she came back to lie on the floor after going to the bathroom late at night, Jason put his hand inside her panties and on her vagina. Kato

specifically asked whether Jason put his hand inside her, and J.O. said it was outside her vagina on both occasions.

Jason signed a statement about the incident later that day. He admitted that in January 2005, on two separate occasions, he put his hand in J.O.'s pants and touched her vagina. According to the written statement, he said that on the first occasion, while J.O. slept, he put his finger into her vagina as far as his fingernail, and then J.O. woke up. The second time J.O. was already awake when he put his finger into her vagina, with the finger again entering as far as the fingernail.

A grand jury indicted Jason on 11 separate counts for sex crimes against J.O., and prosecutors chose to try him on 2 counts of PCSA (720 ILCS 5/12-14.1(a)(1) (West 2004)).

Before trial, the prosecution filed a motion seeking to admit at trial testimony about the statements J.O. made to Augustina, Cordero and Kato. Augustina and Cordero testified at the hearing on the motion about the circumstances in which they elicited J.O.'s disclosures. Detective Linda Paraday, who watched Kato interview J.O., testified about that questioning and J.O.'s answers. The trial court found that the questions did not effectively coach J.O. to give the answers she gave, and therefore, the statements were sufficiently reliable for admission into evidence under section 115-10 of the Code of Criminal Procedure of 1963 (Code)(725 ILCS 5/115-10(a), (b) (West 2008)).

Jason asked for a jury trial. The judge admonished the venire about the principles that the jurors must presume the defendant's innocence, the State must prove the defendant's guilt beyond a reasonable doubt, the defendant has no duty to present any evidence, and the jurors must not hold against the defendant his exercise of his right not to testify. See Ill. S. Ct. R. 431(b) (eff. May 1, 2007). The judge also asked the jurors, in panels of four, whether they agreed with the presumption

of innocence and the burden of proof. The judge did not ask the jurors about the defendant's lack of a duty to present evidence or the right not to testify.

At the trial, J.O. testified that for the first incident, while she slept, she felt Jason's hand inside her pants, touching her vagina. She woke up and took her sister with her as she went to spend the rest of the night in Shelley's room. About three days later, when she again slept on the floor next to Jason's bed, she got up during the night to use the bathroom. When she came back, Jason again put his hand on her vagina. She pushed his hand away and went back to sleep. She did not tell her mother or Shelley about either incident because she thought she would get in trouble.

Augustina, Cordero and Paraday repeated the testimony they gave at the pretrial hearing. Paraday admitted that when Kato interviewed J.O., J.O. specified that Jason's hand stayed outside her vagina in each incident. An assistant State's Attorney read to the jury the handwritten statement Jason signed. The parties stipulated that in January 2005 Jason was 19 years old.

Jason testified that he never touched J.O. inappropriately, and he never put his hand in her pants. Partly because of a conversation he had with J.O., he told Cordero about the sucking sounds he heard coming from a room where J.O. was alone with Phillip. After the arrest, Jason spent some hours locked in a cell. He fell asleep. When he awoke, he could not stand straight. He also experienced some twitches he could not control. He testified that he might have had an epileptic seizure in the cell without realizing it. He did not recall much about the statement he signed at the station. He could not make much sense of what the officers had tried to say to him.

A doctor testified that Jason suffered from epilepsy, and at the time of the arrest, medications did not adequately control his condition. The doctor had no opinion as to whether Jason suffered a

seizure on the day of the arrest. The doctor testified that epileptics often remain confused for hours after a seizure.

The court instructed the jurors that when they considered the testimony of any witness, they could take into account the witness's "ability and opportunity to observe, his memory, his manner while testifying, any interest, bias or prejudice he may have, and the reasonableness of his testimony considered in the light of all the evidence in the case." The court did not instruct the jurors on the weight they should give statements made out of court, or factors to consider in assessing the credibility of children's statements. See 725 ILCS 5/115-10(c) (West 2008). The court refused Jason's request for an instruction on the lesser-included offense of ACSA.

The jury found Jason guilty on both counts of PCSA. The trial court sentenced him to terms of 10 years and 8 years in prison, with the sentences to run consecutively. Jason now appeals.

## ANALYSIS

Jason raises six separate arguments on appeal. He argues (1) the trial court should have excluded the testimony about J.O.'s out-of-court statements; (2) the court failed to comply with Supreme Court Rule 431(b) concerning admonitions to jurors; (3) the evidence proved the *corpus delicti* only for ACSA, and not for PCSA; (4) the trial court should have instructed the jury in accord with the requirements of section 115-10(c) of the Code; (5) the trial court should have instructed the jury on the lesser-included offense of ACSA; and (6) the trial court imposed an excessive sentence.

### Out-of-Court Statements

The threshold issue we must decide is whether the trial court erred when it permitted Augustina, Cordero and Paraday to testify about J.O.'s out-of-court statements. Section 115-10 of

the Code provides:

> "(a) In a prosecution for a physical or sexual act perpetrated upon or against a child under the age of 13 ***, the following evidence shall be admitted as an exception to the hearsay rule:
>
> ***
>
> (2) testimony of an out of court statement made by the victim describing *** an element of an offense which is the subject of a prosecution for a sexual or physical act against that victim.
>
> (b) Such testimony shall only be admitted if:
>
> (1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and
>
> (2) The child ***
>
> (A) testifies at the proceeding; *** [and]
>
> (3) *** [T]he out of court statement was made *** within 3 months after the commission of the offense ***." 725 ILCS 5/115-10 (West 2008).

Jason argues that the trial court erred when it found J.O.'s out-of-court statements to Augustina, Cordero and Kato sufficiently reliable. He does not contest any of the other criteria for admissibility of the statements. In assessing the reliability of the out-of-court statements, the court

should consider "the child's spontaneous and consistent repetition of the incident, the child's mental state, use of terminology unexpected of a child of similar age, and the lack of a motive to fabricate." *People v. West,* 158 Ill. 2d 155, 164 (1994). The prosecution bears the burden of establishing the reliability of the statements. *People v. Simpkins*, 297 Ill. App. 3d 668, 676 (1998). We review for abuse of discretion the trial court's decision to admit the statements into evidence. *People v. Major-Flisk*, 398 Ill. App. 3d 491, 508 (2010).

J.O. made all of her statements about a month after the incidents, but only after adults questioned her about people making her uncomfortable by touching her. She spontaneously named Jason as the offender, and she consistently repeated the basic account of the offenses. While the delay counts slightly against reliability, children often delay reporting similar incidents. See *People v. Guajardo*, 262 Ill. App. 3d 747, 760 (1994). The record provides no indication of any agitation or likelihood of delirium, and nothing about J.O.'s mental state shows that she made the statements to imitate others or please authority figures. See *In re E.H.*, 377 Ill. App. 3d 406, 414 (2007). J.O. used language appropriate for a child to describe the incidents, so the language does not suggest that adult prompting led to the statements. See *Simpkins*, 297 Ill. App. 3d at 678. We see no motive for her to fabricate an assault by Jason, even if she had a motive not to accuse Phillip, her stepfather, of the offenses. After weighing the factors, we cannot say that the trial court abused its discretion by admitting the testimony of Augustina, Cordero and Paraday about J.O.'s out-of-court statements. See *People v. Sharp*, 391 Ill. App. 3d 947, 955-56 (2009).


Rule 431(b)

The State admits that the trial court failed to comply with Rule 431(b) because the court never asked the members of the venire whether they understood and accepted the principles that the defendant need not present any defense and that if the defendant chooses not to testify, the jurors must not treat that choice as an indication of guilt. Jason concedes that he did not object at trial when the judge failed to ask the Rule 431(b) questions. Therefore, we review the issue only for plain error. *People v. Thompson*, 238 Ill. 2d 598, 611-12 (2010). We will reverse a judgment based on a plain error when "(1) a clear or obvious error occurs and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurs and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Sargent*, 239 Ill. 2d 166, 189 (2010).

The *Thompson* court held that a similar violation of Rule 431(b) did not amount to a structural error, and the error did not implicate a fundamental right. *Thompson*, 238 Ill. 2d at 611, 614-15. Here, Jason, like the defendant in *Thompson*, has not shown that the court empaneled a biased jury, so he has not shown that the error affected the integrity of the judicial process. Accordingly, we will not reverse the conviction under the second prong of plain error review.

For the first prong, Jason admits that the evidence at trial proves that he committed ACSA, but he contends that the evidence of PCSA balances closely against the evidence that he did not commit PCSA. However, even if we find the evidence closely balanced on PCSA, we do not see how the error could have affected the jury. The trial court correctly informed the jurors of all the principles stated in Rule 431(b). The court did not question the jurors as to whether they agreed that

Jason did not need to testify or present any evidence, but we do not see how any disagreement with this principle could have affected the verdict here. Jason both testified at trial and presented other evidence in his defense. See *People v. White*, No. 1-08-3090, 2011 Ill. App. Lexis 3, at *15 (Ill. App. Jan. 7, 2011). Therefore, we cannot say that Jason has shown that the trial court, by failing to comply fully with Rule 431(b), committed a plain error that requires reversal.

### *Corpus Delicti*

Next, Jason asks us to reduce his convictions from PCSA to ACSA. To prove that Jason committed ACSA, the State needed to show that Jason was over 17 years old and J.O. was under 13 years old when Jason committed an act of sexual conduct on J.O. 720 ILCS 5/12-16(c)(1)(i) (West 2004). The statutory definition of "sexual conduct" includes contact between a defendant's finger and the victim's vagina for the purpose of sexual gratification. 720 ILCS 5/12-12(e) (West 2004). To prove PCSA, the State needed to prove the facts that prove ACSA, plus "sexual penetration" (720 ILCS 5/12-14.1(a)(1) (West 2004)), which the statute defines to include "any intrusion, however slight, of any part of the body of one person *** into the sex organ *** of another person" (720 ILCS 5/12-12(f) (West 2004)). See *People v. Kolton*, 219 Ill. 2d 353, 367-71 (2006) (trial court properly found the defendant guilty of ACSA as a lesser-included offense of the charged offense, PCSA). Jason contends that because the State failed to present evidence corroborating his confession that he put his finger in J.O.'s vagina, the State failed to prove the *corpus delicti* for PCSA. See *Sargent*, 239 Ill. 2d at 183.

Illinois has long followed the rule that "proof of the *corpus delicti* may not rest exclusively on a defendant's extrajudicial confession, admission, or other statement." *Sargent*, 239 Ill. 2d at 183.

The corroboration rule has changed very little since our supreme court applied it in *Bergen v. People*, 17 Ill. 425, 427-28 (1856). In *Wistrand v. People*, 213 Ill. 72, 79 (1904), our supreme court held that the prosecution must present some evidence corroborating every element of the crime charged to establish the *corpus delicti*. In *Wistrand*, the defendant confessed to statutory rape, including the fact that he was over 16 years old at the time of the offense, when the victim was not yet 14 years old. The State presented evidence corroborating the confession to the act, but the State presented no evidence to corroborate the defendant's confession to his age. Our supreme court held that without sufficient evidence of the *corpus delicti*, the court had to reverse the conviction.

Our supreme court later overruled *Wistrand*, and modified the corroboration rule, in *People v. Dalton*, 91 Ill. 2d 22 (1982). In *Dalton*, like *Wistrand*, proof of a sex crime required proof of the defendant's age, and the defendant confessed to his age, but the State presented no evidence to corroborate the statement about his age. The *Dalton* court explained:

> "The corroboration rule requires that the *corpus delicti* be proved by some evidence *aliunde* admission of a defendant. *** The corroboration rule was the result of an historical mistrust of extrajudicial confessions. Two reasons for this mistrust have commonly been cited: confessions are unreliable if coerced; and, for various psychological reasons persons 'confess' to crimes that either have never occurred or for which they are not legally responsible." *Dalton*, 91 Ill. 2d at 29.

Several studies have addressed the psychological conditions that may lead a person to confess to a crime he did not commit. One commentator said that "however produced or manipulated, the

human capacity for guilt is the fundamental cause of false confessions. The false confession relieves guilt arising from acts or events unrelated to the substance of the confession." Corey J. Ayling, Comment, *Corroborating Confessions: An Empirical Analysis of Legal Safeguards Against False Confessions*, 1984 Wis. L. Rev. 1121, 1161 (1984). Another commentator observed that "an interrogation method likely to produce an untrustworthy confession may cause a suspect who is in fact guilty of a lesser degree of guilt to admit to a higher degree of guilt." Welsh S. White, *What is an Involuntary Confession Now?*, 50 Rutgers L. Rev. 2001, 2027 n.169 (1998).

The *Dalton* court distinguished statements that psychological factors and coercive interrogation techniques might produce from assertions of certain sorts of facts that an accused would not likely misstate, even when those facts form elements of the crimes at issue:

> "An admission of one's birth date is not subject to the peculiar perceptions or recollections of a defendant who is under the psychological pressures of an arrest or indictment. [Citation.] It appears to be inherently more reliable than a statement of what one did, or saw, or heard, or thought because it is a statement of an immutable characteristic. *** Accordingly we hold that the statement [as to the defendant's age] was admissible without corroboration." *Dalton*, 91 Ill. 2d at 30.

Our supreme court cited *Dalton* with approval in *Sargent*, 239 Ill. 2d at 187, which again applied the corroboration rule to proof of the *corpus delicti* for a sex crime. In *Sargent*, the State presented evidence that a minor, M.G., out of court, had said that the defendant put his finger in

M.G.'s butt. The defendant confessed (1) that he put his finger in M.G's butt and (2) that he fondled M.G.'s penis. The State presented no evidence to corroborate the confession to fondling M.G's penis. A jury found the defendant guilty of both PCSA, for putting his finger in M.G.'s anus, and ACSA, for fondling M.G.'s penis.

The *Sargent* court held:

> "The State contends that evidence of defendant's penetration of M.G.'s anus with his finger *** provides sufficient corroboration that defendant also fondled M.G.'s penis. *** Our precedent demonstrates that under the corroboration rule, the independent corroborating evidence must relate to the specific events on which the prosecution is predicated. Correspondingly, where a defendant confesses to multiple offenses, the corroboration rule requires that there be independent evidence tending to show that defendant committed each of the offenses for which he was convicted. [Citation.]
>
> *** There may be circumstances where criminal activity of one type is so closely related to criminal activity of another type that corroboration of one may suffice to corroborate the other, but such circumstances are not present here. See *People v. Richmond,* 341 Ill. App. 3d 39, 46 (2003) (corroboration rule applied to overturn conviction and sentence involving unlawful penis-to-vagina contact,

notwithstanding defendant's confession, where corroborating evidence substantiated only penis-to-anus contact). Defendant's convictions and sentences on the two counts of aggravated criminal sexual abuse of M.G. must therefore be reversed." *Sargent*, 239 Ill. 2d at 184-85.

Applying *Dalton* and *Sargent* here, we find sufficient corroboration for Jason's confession that he committed ACSA when he touched J.O.'s vagina, but we find no corroboration for the single element, sexual penetration, that distinguishes ACSA from PCSA. See *Kolton*, 219 Ill. 2d at 368. Augustina, Cordero and J.O. presented no evidence that any part of Jason's body intruded into J.O.'s vagina. Paraday admitted that in the forensic interview, in response to a direct question about the extent of the contact, J.O. said that Jason's hand stayed outside her vagina in both incidents. The only evidence of penetration came from the written statement Jason signed. Penetration of J.O.'s vagina is not an immutable characteristic like a birth date. Jason's statement concerns what he did, which is subject to his peculiar perceptions or recollections and is not inherently reliable. See *Dalton*, 91 Ill. 2d at 30. Instead, a guilty conscience, weighed down with the recognition that he had abused a position of trust, may have led Jason to overstate his guilt, or pressure from Augustina and the police may have led Jason to add an untrue detail to his confession. See Ayling, *supra* at 1159-79; White, *supra* at 2027. The historical reasons for mistrusting confessions fully apply to the element that changes these crimes from Class 2 felonies (720 ILCS 5/12-16(g) (West 2004)) to Class X felonies (720 ILCS 5/12-14.1(b)(1) (West 2004)).

The State argues that instead of applying the corroboration rule from *Dalton*, we should apply the rule stated in *People v. Salinas*, 347 Ill. App. 3d 867, 881 (2004), where the court held, "the

independent evidence need only show that *a* crime occurred, not *the* crime for which the defendant specifically was convicted." (Emphasis in original.) If *Salinas* stated the corroboration rule correctly, our supreme court decided *Sargent* wrongly. The independent evidence in *Sargent* proved that a crime occurred, namely, PCSA by the insertion of a finger into M.G.'s butt. Under the rule stated in *Salinas*, then, the corroboration of that crime should have sufficed to make the defendant's confession in Sargent count as the *corpus delicti* for every crime to which he confessed, including ACSA by fondling M.G.'s penis. But *Sargent* found the defendant not guilty of ACSA because there was no evidence independent of his confession to show that he fondled M.G.'s penis. *Sargent*, 239 Ill. 2d 184-85. Because we cannot reconcile the corroboration rule as stated in *Salinas* with the binding authority of *Sargent* and *Dalton*, we cannot follow *Salinas*. Accordingly, we reverse both convictions for PCSA and vacate Jason's sentences on those charges.

Instructions

The parties recognize that we have the authority, under Supreme Court Rule 615(b)(3) (Ill. S. Ct. R. 615(b)(3) (eff. Aug. 27, 1999)), to reduce Jason's convictions from PCSA to ACSA. However, before we can do so, we must address Jason's further arguments which could provide grounds for a retrial on the ACSA charges.

Jason argues that the trial court erred when it failed to instruct the jury in accord with section 115-10(c) of the Code. 725 ILCS 5/115-10(c) (West 2008). That section provides that when the court admits a child's out-of-court statement pursuant to section 115-10(a) and (b), the court must "instruct the jury that it is for the jury to determine the weight and credibility to be given the statement and that, in making the determination, it shall consider the age and maturity of the child,

*** the nature of the statement, the circumstances under which the statement was made, and any other relevant factor." 725 ILCS 5/115-10(c) (West 2008).

Jason admits that he forfeited the issue by failing to request the proper instruction. See *People v. Almo*, 108 Ill. 2d 54, 66 (1985). We review the issue only for plain error. *Almo*, 108 Ill. 2d at 66.

We have already reversed the convictions for PCSA and must decide only whether to reduce the convictions to the lesser included offenses of ACSA. We do not consider the evidence concerning ACSA closely balanced. J.O.'s testimony at trial, corroborated by evidence of the statements she made out of court and Jason's confession, convincingly proves that Jason committed two acts of ACSA. Accordingly, the first prong of plain error review gives us no grounds to remand for retrial on the ACSA charges.

Jason contends that the failure to give the mandatory instruction "affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *Sargent*, 239 Ill. 2d at 189. The *Sargent* court considered a similar question in a similar context. The *Sargent* court held:

> "The erroneous omission of a jury instruction rises to the level of plain
>
> error only when the omission creates a serious risk that the jurors
>
> incorrectly convicted the defendant because they did not understand
>
> the applicable law, so as to severely threaten the fairness of the trial."
>
> *Sargent*, 239 Ill. 2d at 191.

The *Sargent* court noted that the trial court had instructed the jury that, to evaluate the testimony of any witness, the jurors should "take into account his ability and opportunity to observe, his age, his

memory, his manner while testifying, any interest, bias or prejudice he may have, and the reasonableness of his testimony considered in the light of all the evidence in the case." (Internal quotation marks omitted.) *Sargent*, 239 Ill. 2d at 192. Although that instruction did not directly address the assessment of the out-of-court statements at issue there, the court held that the failure to give the statutorily required instruction did not warrant reversal. *Sargent*, 239 Ill. 2d at 192-94.

Here, too, the court gave the pattern instruction concerning the assessment of the credibility of the witnesses. Although that instruction did not refer to out-of-court statements, and it did not specify the age and maturity of the child as factors to consider, we see no serious risk that the jurors misunderstood the applicable law in a way that severely threatened the fairness of the trial. Accordingly, we find no plain error in the failure to give the instruction mandated by section 115-10(c) of the Code.

Jason also claims that the trial court erred by failing to instruct the jury on the lesser-included offense of ACSA. But that failure affects only the PCSA convictions we have already vacated. Because we have vacated the convictions and sentences for PCSA, we need not address Jason's challenges to his sentence. Accordingly, we exercise our authority under Rule 615(b)(3), reduce Jason's convictions to convictions on two counts of ACSA, and remand for sentencing on the two convictions for ACSA.

## CONCLUSION

The trial court did not abuse its discretion when it admitted into evidence the statements J.O. made out of court to Augustina, Cordero and Kato. The trial court's failure to comply with Rule 431(b) did not amount to plain error. The State failed to prove the *corpus delicti* for PCSA because

1-09-1326

it failed to corroborate the assertion in Jason's written statement that he put his finger inside J.O.'s vagina. The court did not commit plain error by failing to instruct the jury in accord with section 115-10(c) of the Code. Accordingly, we vacate the two convictions for PCSA, reduce Jason's two convictions for PCSA to two convictions for ACSA, and remand the case for sentencing on the two ACSA convictions.

Reversed and remanded with directions.

JUSTICE MURPHY, specially concurring:

I concur with the majority's ultimate conclusion in this case but write separately because I take a broader view of the case law regarding *corpus delicti* and the corroboration rule. Quite simply, I believe that *Sargent* and *Salinas* may be reconciled and that the case law requires that the evidence presented in corroboration must *tend* to show the crime was committed, not prove every element. From the record presented, it is difficult to find a direct question and answer during the interview and testimony of the victim concerning whether defendant inserted his finger and penetrated, "however slight[ly]," the victim's vagina. However, I concur because there was testimony that the victim responded "outside" one time when she may have been asked whether she was touched inside or outside her private part. This was consistent with her other statements that she was touched on or outside her private area and sufficiently raises doubt of whether there was penetration.

Detective Paraday could not recall the specific question of whether the victim was touched inside or outside her private area, but noted several times that question normally "would be a part of the questioning." Paraday's recollection was refreshed and she stated her notes indicated "hand go inside or outside of private" and the victim stated "I felt it outside." While there is no evidence of a specific denial, I agree the record sufficiently supports the concerns outlined by the majority that led to the creation of the corroboration rule. For the purposes of this case, this testimony acts essentially as a denial of the key element of penetration.

I agree with the majority that the element of penetration is obviously not an immutable characteristic such as the age of a defendant as explained in *Dalton* and we must consider the *corpus delicti* rule. Unlike the majority, I believe that *Sargent* and *Salinas* may be reconciled. There is no

dispute that it is well established that proof of the *corpus delicti* may not rest exclusively on the extrajudicial confession, admission, or other statement of the defendant. *People v. Sargent*, 239 Ill. 2d 166, 183 (2010)(citing *People v. Furby*, 138 Ill. 2d 434, 446 (1990)).

However, the *Furby* court noted that the rule does not require absolute corroboration, but requires that "the prosecution must present evidence *aliunde* the defendant's confession that tends to show the commission of the offense and is corroborative of the circumstances related in the statement." *Furby*, 138 Ill. 2d at 446. Accordingly, the corroborative evidence " 'need not establish beyond a reasonable doubt that an offense did occur.' " *Furby*, 138 Ill. 2d at 446 (quoting *People v. Willingham*, 89 Ill. 2d 352, 361 (1982)). In fact, the majority includes the language used by the *Sargent* court noting that "where a defendant confesses to multiple offenses, the corroboration rule requires that there be independent evidence tending to show that defendant committed each of the offenses for which he was convicted" and "[t]here may be circumstances where criminal activity of one type is so closely related to criminal activity of another type that corroboration of one may suffice to corroborate the other." *Sargent*, 239 Ill. 2d at 185.

Unlike this case, in *Sargent*, the defendant was convicted of multiple counts of PCSA and ACSA for placing his finger in the anus of both his minor stepsons, M.G. and J.W., and for fondling the penis of M.G. for the purpose of his own sexual gratification. The statements by the minor children only corroborated the defendant's confession that he inserted his finger into the anus of the first stepson. At trial, M.G. testified that he did not remember the defendant doing anything that he did not like, but his extrajudicial statements included allegations that defendant "put his finger in [my] butt." *Sargent*, 239 Ill. 2d at 171. J.W.'s extrajudicial statements included allegations that the

-19-

defendant regularly "tried to put his penis in my butt," but that he had not been touched in any other way. At trial, J.W. testified that defendant had been successful in his attempts to insert his penis in his anus. *Sargent*, 239 Ill. 2d at 174.

The court rejected the State's argument that J.W.'s corroboration and the evidence of the defendant's insertion of his finger into M.G.'s anus were sufficient proof that the defendant also fondled M.G.'s penis. These were separate acts which gave rise to separate charges and where a defendant confesses to multiple offenses, the corroboration rule requires independent evidence of each offense. *Sargent*, 239 Ill. 2d at 185. The court concluded that there was evidence that the defendant penetrated M.G.'s anus on one occasion and this only supported the one conviction for PCSA and the other convictions were reversed. *Sargent*, 239 Ill. 2d at 187.

The majority applies that holding to this case in requiring corroboration on all elements. In doing so, it rejects the State's citation to *People v. Salinas*, 347 Ill. App. 3d 867, 881 (2004), and that court's holding that case law requires only a showing that " 'a' " crime occurred and it need not be the specific crime for which the defendant is charged. *Salinas*, 347 Ill. App. 3d at 881 (quoting *People v. Holmes*, 67 Ill. 2d 236, 240 (1977)). It also rejects that court's holding that where independent evidence proves an offense occurred, then those facts corroborative of the confession " 'may be considered *along with the confession* in establishing the *corpus delicti*.' " (Emphasis in original.) *Salinas*, 347 Ill. App. 3d at 882 (quoting *Willingham*, 89 Ill. 2d at 361). The majority reasons that if *Salinas*' statement of the corroboration rule is correct, our supreme court decided *Sargent* wrongly. Therefore, the majority rejects the State's argument that in this case the evidence presented corroborated defendant's statement that he touched J.O.'s vagina and that evidence is so

closely related to the penetration issue, that it served to corroborate that portion of his statement.

In *Salinas*, the defendant was convicted of two counts of solicitation of murder for hire. The defendant argued that the State failed to corroborate his confession and prove the *corpus delicti*. Unlike *Sargent*, where there was no corroborating evidence to the defendant's statement that he touched the victim's penis, in *Salinas*, there was "a great deal of evidence that corroborates the confession" to prove the *corpus delicti*. *Salinas*, 347 Ill. App. 3d at 882. Accordingly, the *Salinas* court considered the various pieces of evidence with the confession and the conviction was affirmed.

In the instant matter, there was not complete corroboration of defendant's statement that he penetrated J.O.'s vagina with his finger, while I would not find this fatal on its own, as in *Sargent*, there is testimony of record that J.O. indicated that she only felt defendant's finger on her private area. J.O.'s out-of-court statements and testimony and the testimony of Pagan and Cordero were consistent and consistent between the two incidents. Defendant did indicate that the victim was asleep when he touched her the first time, and one could parse words that the victim only stated "I felt it outside," leaving open the question of whether penetration occurred while she slept. However, since the record does not provide an answer to that question, but does contain the victim's consistent statements that she was touched outside or on her private area, I must concur with the ultimate finding here. But for that evidence, I cannot think of a better situation to apply the *Sargent* court's statement that there "may be circumstances where criminal activity of one type is so closely related to criminal activity of another type that corroboration of one may suffice to corroborate the other." *Sargent*, 239 Ill. 2d at 185.

*Sargent* does not abandon the long-standing language that independent evidence must tend

to show the crime did occur and that if the confession is corroborated, the confession and corroborating evidence may be considered together to determine whether there is proof beyond a reasonable doubt. I fear that requiring evidence of every element may essentially flip the corroboration rule on its head - requiring the independent evidence include every element of the crime in order to use the confession. Essentially, this would make the confession corroboration for the victim's testimony, thereby requiring the State to prove the crime twice over, a vexing proposition given the very nature of PCSA and available evidence. Of course, the contrary concern of allowing an improper confession in as evidence with insufficient investigation or evidence raises other serious concerns.

While an understandable reading of the discussion in *Sargent*, I fear that this opinion will provide further confusion for underlying courts considering this issue. Unfortunately, if read too strictly, I fear this may require the prosecution to prove its case two times over. Accordingly, I believe the holding in this case should be limited to situations where evidence such as the testimony of a victim specifically denies or rejects an element at issue.